### 50380. AETNA CASUALTY & SURETY COMPANY v. C. P. COMPANY et al.
### 50381. AETNA CASUALTY & SURETY COMPANY v. POWELL et al.
### 50382. AETNA CASUALTY & SURETY COMPANY v. ALLEN et al.

WEBB, Judge.

These three actions in tort are before us on appeal by Aetna Casualty & Surety Company from the denial by the trial court of its motions for summary judgment. C. P. Company, one of the plaintiffs, appears to have been engaged in managing the building in which a fire occurred, and in the preparation of space for occupancy by tenants, and as such asserts its claim for damage because of the fire. Mrs. Powell and Mrs. Allen, the plaintiffs in the other two actions, seek recovery for the deaths of their respective husbands, who were employees of a subcontractor engaged in the installation of a parquet floor at the place and the time of the fire. The record indicates that there were two other deaths resulting from the fire.

Defendants and third-party defendants in addition to Aetna were Jones Construction Company; Coe and Payne Company; Wood-Mosaic Corporation; Overall Paint Company; Atlanta Flooring Company; Edwards &

Portman, Architects; John C. Portman, Jr.; H. Griffith Edwards; Mrs. Roline Clarke Adair; Alan L. Ferry; Trammell Crow; Goodman Decorating Company, Inc.; Flintkote Company, Inc.; Peachtree Center, Inc.; Whitehead Realty Company; Mutual Life Insurance Company of New York; and Travelers . Insurance Company. In the Powell and Allen Cases C. P. Company is also a defendant.

A brief statement of the facts developed up to the time of the motions for summary judgment and pertinent to our consideration of these appeals is appropriate. At about 2:15 on the afternoon of December 5, 1968 a sudden fire occurred in the offices of a law firm located on the twentieth floor of the Atlanta Gas Light Tower Building, one of the towering office structures of the Peachtree Center complex in downtown Atlanta.

Construction of the building had begun about March, 1966, was substantially completed by October, 1968, other than tenant work, and finished altogether, including tenant work, about April, 1969. Jones Construction Company was the general contractor. In October, 1968, Jones executed a subcontract with Coe and Payne under which the latter would furnish labor and materials and install certain parquet floors in the law firm suite on the twentieth floor for $1,315. At the time and the place of the fire employees of Coe and Payne were installing the parquet floors, which had been manufactured and marketed by Wood-Mosaic, using upon the latter's specification an adhesive product known as R-65 manufactured and marketed by Overall Paint. and sold to Coe and Payne by Atlanta Flooring Company.

Answers to interrogatories reveal that the R-65 adhesive was the "immediate cause" of the fire, and that it "is an extremely flammable solvent with a high vapor density," the ignition of which could have been caused by various possible sources of electrical sparks and heat present when the adhesive was being applied immediately before the combustion. There seems to be no dispute as to the foregoing facts.

Aetna, the appellant herein, had in force policies of general liability insurance and workmen's compensation insurance that it had issued to Jones, the general

contractor, and also policies of general liability insurance and workmen's compensation insurance that it had issued to Coe and Payne, the subcontractor. These policies contained a provision permitting, but not requiring, Aetna to inspect the insured's property and operations at any time.

Even so, without a written contract on the subject of engineering or safety inspections insofar as the record discloses, for some years prior to the construction of this building Aetna had assigned an engineering representative from its Safety Engineering Department to make visits at approximately monthly intervals to each of Jones' construction projects, and in 1963 and again in 1968, participated with Jones in the preparation of an Accident Prevention Manual for distribution to and use of Jones' job management and supervisory personnel.

Aetna's engineering representative was Raymond N. Walsh who deposed that in March, 1966, he was "assigned primary responsibility for rendering the services to be provided by Aetna under its policies with J. A. Jones Construction Company (Jones), the general contractor in connection with the construction of the Atlanta Gas Light Tower building"; from that time until May, 1969, he made visits to the project at approximately monthly intervals; his "responsibility as Aetna's representative on that project was to advise and consult Jones' supervisory and management personnel and in that way to assist Jones in carrying out its safety program. . . "; "from time to time Aetna directed its regional engineering departments that were concerned with Jones' projects to emphasize on monthly visits certain areas of safety such as hoists, scaffolds, first aid, and the like . . ."; that he had "no duty or authority to supervise or give instruction or orders to any Jones employee"; that on the day of the fire (December 5, 1968) he made his monthly visit to cover this building and another adjacent thereto under construction by Jones, but because Messrs. Johnsa and Hammer, superintendent and assistant superintendent on these jobs for Jones, told him there had been no change since his last visit (which was November 13, 1968) in the nature of tenant work, he did not actually enter the building on December 5, 1968 prior to the fire; "my concern as Aetna's

field representative assigned to the Gas Light Tower building was to assist Jones' supervisory personnel to keep the job as nearly as possible in compliance with the Accident Prevention Manual, and I was guided in my work on that job by the provisions of that manual." The foreword of that 1968 manual includes the paragraph, "We have an obligation to work closely with our insurance carrier, Aetna Life & Casualty. We want to consider Aetna as part of our team in helping us achieve our goal of making your job a safe job."

Mr. Walsh's report of his visit on November 13, 1968 indicates that he interviewed Paul Johnsa, project superintendent; that sub-contractors were installing partitions, suspended ceilings, painting, decorating, floor covering, electrical services, heating and air conditioning; that on this report of his inspection in Paragraph 6 (a) he checked the boxes showing that he was *not* satisfied "with scheduling, thoroughness and follow-up of insured in the following Loss Control Activities: . . . Fire and Explosion Controls"; and in answer to the question on the report, "What did you contribute this visit?" he wrote in part "Discussion of job operations, hazards, correction methods." Instead of inspecting the premises on December 5, 1968, the date he was there for that purpose, Mr. Walsh simply accepted the statement of Mr. Johnsa that there had been no change since his visit on November 13. In a supplemental affidavit, made nine months after his initial affidavit, and nearly six years after his report of November 13, 1968, Mr. Walsh, now retired from his employment as an engineering representative of Aetna Casualty, said "I intended to check all of the 'Yes' boxes and none of the 'No' boxes in Paragraph 6 (a) of the report on the Atlanta Gas Light Tower Building." He deposed that a copy of the report was not left with the contractor.

Mr. Willard V. Payne, Jr. deposed that he had worked in a supervisory capacity with Coe and Payne Company; that he was on the twentieth floor of the building about 1:15 p.m. on the day of the fire; that the tenants in the law offices had already moved in, the company's three floor installers were working, there was a receptionist for the law office, and he saw another person who he thought to be

one of the lawyers; that a painter was touching up some places on the door facing; that there was no smoking by himself or any of his workmen, and he smelled no vapors from the mosaic or solvent; that he considered the area to be well ventilated, he left the site at about 2 o'clock, and learned of the fire about 2:30 when he got back to his office.

Tracey Ruepple Lindsey III testified by deposition that on December 5, 1968 he was assistant building manager of the Atlanta Gas Light Tower, employed by Peachtree Center, a partnership, and paid by C. P. Company, the landlord whom he represented; on that date he was in the law firm offices on the twentieth floor to ascertain their wants about some light panels; that while there he observed two workmen, who he concluded had been putting some glue down; that he had conferred with the law office manager and as he walked down the corridor to leave the suite afterwards he saw a small flame several inches high flickering at the threshold of the door in the vicinity of the coffee room; "everything was quiet at that point, very quiet . . . all of a sudden meaning a matter of seconds — combustion took place and the fire combusted to several feet. Just a whoosh, the sound of combustion, you know. I heard no explosion."

The R-65 wood block flooring adhesive container bore a label with inscription in large type "Danger: Extremely Flammable Mixture. Do Not Use Near Fire or Flame. Use Only in Well Ventilated Areas."

Upon these facts Aetna insists that it is entitled to summary judgment. *Held:*

The controlling issue in this appeal is whether Aetna, under all the circumstances including prior course of conduct, had undertaken the duty to make safety inspections which would have disclosed the conditions that caused the fire. Contrary to Aetna's assertion, it is our view that it has not carried its summary judgment burden of showing that it did not so undertake; and under the holding in *Sims v. American Cas. Co.,* 131 Ga. App. 461 (206 SE2d 121), aff'd 232 Ga. 787 (209 SE2d 61), the denial of Aetna's motions for summary judgment must be affirmed. Upon trial, of course, the burden will rest upon plaintiffs to show that Aetna did undertake that duty, as

well as the other requisites for recovery set forth in *Sims, supra.*

*Judgments affirmed. Bell, C. J., and Marshall, J., concur.*

ARGUED MARCH 4, 1975 — DECIDED APRIL 11, 1975.

*Nall, Miller & Cadenhead, Edward S. White,* for appellant.

*Neely, Freeman & Hawkins, Albert H. Parnell, Richard P. Schultz,* for C. P. Co.

*Reeves & Collier, Rex T. Reeves, Merrell Collier,* for Powell.

*Scott Walters, Jr.,* for Allen.