## 51300, 51301. PENNSYLVANIA MILLERS MUTUAL INSURANCE COMPANY v. THOMAS MILLING COMPANY, INC. et al.; and vice versa.

MARSHALL, Judge.

This is an action brought by an insured (plaintiff Thomas Milling Co., Inc.) against its insurer (defendant Pennsylvania Millers Mutual Insurance Co.) to enforce the policy protection afforded by existing policies of insurance for property damage to plaintiff's milling facilities, and an additional count alleging liability based in tort arising out of the insurer's gratuitous but allegedly negligent inspections of the insured's business site. The trial court granted the insurer's motion for summary judgment as to five counts of the insured's petition, all of which were ex contractu and based upon the contract of insurance. The court denied the insurer's motion for summary judgment as to the ex delicto, sixth count of insured's petition based in tort. The insurer, Pennsylvania Millers Mutual, appeals in case No. 51300 the denial of its motion for summary judgment as to the sixth count of plaintiff's petition based in tort. The insured, Thomas Milling, appeals in case No. 51301, the grant of the insurer's motion for summary judgment of the five counts of insured's petition based on the contract.

The following disputed and undisputed facts are pertinent to our decision. The milling equipment and supplies of Thomas Milling were insured by virtue of two valid, existing contracts of insurance issued by Pennsylvania Millers Mutual. During the life of these policies, certain steel grain storage bins and load-out tanks were damaged with concurrent grain loss. The insured maintained that the damage resulted from an explosion, a covered casualty, whereas the insurer claimed the damage resulted from a latent structural

defect, which caused the bins to collapse, a non-insured risk. Though the contract of insurance did not require inspections by the insurer, the insurer did inspect the insured's premises each calendar quarter, filing reports of deficiencies. The insured maintained that it acted upon the findings and recommendations of the insured. The insured claimed in the sixth count of its petition that insurer having undertaken to conduct inspections, thereby assumed the obligation to detect dangerous conditions and the duty to report such to the insured. It alleged that the failure to detect the dangerous condition which resulted in the damage to the steel bins and load-out tanks and to report that defect to the insured was negligent and gave rise to the remedy based in tort. The insured contends these inspections were safety inspections whereas the insurer contends these were internal inspections undertaken as a minimal precaution in connection with its present insured risk and the possible renewal of the two policies.

The contracts of insurance required the insured to bring suit on the contracts within 12 months of the occurrence of the incident giving rise to the claim. Other provisions of the contracts gave the insurer a period of 60 days in which to consider a claim before making payment for a valid claim. The facts indicate the insured filed its suit 12 months and 10 days after the incident. *Held:*

1. The trial court correctly granted the insurer's motion for summary judgment on the counts based in contract. Where parties make by agreement a fixed and unqualified limitation that no suit or action on the policy shall be sustainable unless commenced within 12 months next after the incident giving rise to the claim, statutory limitations do not apply and the parties are bound to their contract as written. Under such a stipulation and limitation, the time is computed to begin from the date the incident occurred, and not from the accrual of the right of action under other stipulations of the policy. *Maxwell Bros. v. Liverpool &c. Ins. Co.,* 12 Ga. App. 127 (76 SE 1036); *Gibraltar Fire &c. Ins. Co. v. Lanier,* 64 Ga. App. 269 (13 SE2d 27); *Modern Carpet Industries, Inc. v. Factory Ins. Assn.,* 125 Ga. App. 150 (186 SE2d 589). There being no genuine issues of material fact and the insurer

being entitled to verdict as a matter of law, the trial court properly granted summary judgment for the insurer. *Holland v. Sanfax Corp.,* 106 Ga. App. 1 (126 SE2d 442); *Raven v. Dodd's Auto Sales &c.,* 117 Ga. App. 416, 421 (160 SE2d 633).

2. We also agree with the trial court's denial of the insurer's motion for summary judgment as to the sixth count of the insured's petition based in tort. A single act or course of conduct may constitute either a breach of contract or an independent tort. If such act or conduct violates a contract obligation, suit may be brought on the breach. If the act or conduct violates a duty owed to plaintiff, independent of contract, to avoid harming him, suit may be brought on the tort. *E. M. Const. Co. v. Bob,* 115 Ga. App. 127 (153 SE2d 641); *Rawls Bros. Co. v. Paul,* 115 Ga. App. 731 (155 SE2d 819).

In this case, policy provisions did not require inspections by the insurer. Nevertheless, the question was presented whether a duty arose from a course of dealing, in which the insurer made inspections and reports, attended by the insured's reliance thereupon. If such a duty arose, the insurer would become liable for negligence resulting in injury while discharging this duty. Hartford Steam Boiler Inspection & Ins. Co. v. Pabst Brewing Co., 201 F 617 (7th Cir. 1912). We are satisfied that the insurer's duty may arise from contract or from undertaking actual inspections without contract. *Orkin Exterminating Co. v. Stevens,* 130 Ga. App. 363 (203 SE2d 587). The insured's petition alleges a gratuitous but negligent course of conduct by the insurer including the making of inspections and reports and reliance thereupon by the insured, resulting in injury to the insured. In a case of first impression in this state, involving an exhaustive digest of the case law of other jurisdictions examining gratuitously assumed inspections, the principle was established that such a course of conduct is sufficient to allege an action in tort independent of the contract of insurance. *Sims v. American Cas. Co.,* 131 Ga. App. 461, 468, 473, 478, 479 (206 SE2d 121). This is not to say that we find evidence of the underlying cause of the injury; whether or not inspections were made gratuitously or pursuant to agreement; whether these inspections were

made for the insurer's internal rating purposes, or for safety or for other purposes; whether the inspections were relied upon by the insured; whether the inspections were actually negligent—all of these points may influence the result in the trial court, and we address none of them. However, applying the rule that the party opposing the motion for summary judgment is entitled to all reasonable doubts and favorable inferences that may be drawn from the evidence, the averment of inspections together with questions of whether or not the insurer performed those inspections in the absence of negligence, constitutes some evidence—albeit circumstantial, of the negligent performance of an assumed duty. *Aetna Cas. &c. Co. v. C. P. Co.,* 134 Ga. App. 552, 556 (215 SE2d 314). This conflict was sufficient to raise an issue required to be submitted to the triers of fact; therefore, summary judgment as to Count 6 was correctly denied. *Byrd v. Ford Motor Co.,* 118 Ga. App. 333 (163 SE2d 327); *Raven v. Dodd's Auto &c., Inc.,* supra; *Fletcher Emerson Mgt. Co. v. Davis,* 134 Ga. App. 699 (215 SE2d 725).

The insurer raises in its brief Ga. L. 1970, pp. 282, 285 (Code Ann. § 56-3206 (a)) and claims nonliability for its inspections thereunder. Code Ann. § 56-3206 (a) has no applicability in the situation presented by this case. That section deals with the property of prospective insureds which because of its geographical location in high risk urban areas is considered uninsurable. Under appropriate circumstances even though the prospective insured previously has been denied coverage, the Fair Access to Insurance Requirements (FAIR) Plan may make insurability possible. We believe that the privileged inspections, statements, records and communications contemplated by that Code section are limited to high risk property within the meaning of the Urban Property Protection and Reinsurance Act of 1968 (Title XI of Housing and Urban Development Act of 1968, Public Law 90-448, 90th Congress, August 1, 1968), and are sui generis.

*Judgments affirmed. Bell, C. J., and Webb, J., concur.*

ARGUED OCTOBER 7, 1975 — DECIDED JANUARY 16, 1976 —

51300, Rehearing denied January 30, 1976 —

*W. Ward Newton,* for appellant.
*Mimbs & Cooley, Jackson S. Cooley,* for appellees.