## 52816. WINSLETT v. TWIN CITY FIRE INSURANCE COMPANY et al.

Argued October 4, 1976 — Decided January 28, 1977.

*Shelfer, Shelfer & Eldridge, Frank M. Eldridge,* for appellant.

*Troutman, Sanders, Lockerman & Ashmore, Robert L. Pennington, Frederick E. Link, J. Littleton Glover, Jr., David A. Handley,* for appellees.

SMITH, Judge.

Oscar Cliff Winslett, a crane operator, was injured while moving a crane to level ground to be dismantled. The crane was owned by Batson-Cook Company, the employer of Winslett, engaged in constructing a post office in Rome, Georgia. The crane had been stopped at the dismantling area, the boom raised to an 85° angle, and while the boom was being swung from the rear to the front, the crane tipped on its side, injuring Winslett. He brought an action against the job supervisor, Pete R. Greene, the architects, Cooper, Cary and Associates and Twin City Fire Insurance Co., d/b/a The Hartford Insurance Company, et al. (hereinafter referred to as Twin City). The trial judge granted a summary judgment to Twin City and the complainant appealed to this court.

1. (a) The action, as against Twin City, the general liability insurer, was based upon the theory that it voluntarily inspected or surveyed the job site and became liable for any negligent inspection or survey. Both parties rely generally upon the following cases: *Sims v. American Cas. Co.,* 131 Ga. App. 461, supra; *Pa. Millers Mut. Ins. Co. v. Thomas Milling Co.,* 137 Ga. App. 430 (224 SE2d 55); *Aetna Cas. &c. Co. v. C. P. Co.,* 134 Ga. App. 552, 556 (215 SE2d 314); Tillman v. Travelers Indemnity Co., 506 F2d 917; Stacy v. Aetna Casualty & Surety Co., 484 F2d 289. In the federal cases it even held reliance upon the inspections by either the employer or employee was essential to recovery. The Georgia cases above cited may intimate, but do not *expressly* hold, that reliance on the inspections or survey is a necessary element of recovery.

The American Law Institute, Restatement of the Law 2d Ed., Torts, § 324A, in the text thereof reads as follows: "One who undertakes, gratuitously or for consideration to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a

duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

In the "caveat" following the text under the caption, "Reliance" the following appears: "The actor is also subject to liability to a third person where the harm is suffered because of the reliance of the other for whom he undertakes to render the services, or of the third person himself, upon his undertaking. This is true whether or not the negligence of the actor has created any new risk or increased an existing one. Where the reliance of the other, or of the third person, had induced him to forego other remedies or precautions against such a risk, the harm results from the negligence as fully as if the actor had created the risk." Twin City contends that the evidence shows there was no reliance either by the contractor or the complainant upon the survey or inspections by Twin City. The appellant contends that no reliance is necessary under the rules stated in our cases. The present case is one wherein such reliance was alleged, but was shown not to exist; however, as we view the case, it is not necessary to decide whether or not a reliance on the inspections or surveys was a necessary element in the theory of complainant's recovery as the proof presented on the motion for summary judgment conclusively shows that any inspections or surveys made by Twin City or lack of inspection or survey, which under the rule in *Sims* it may have been obligated to make after beginning inspections or surveys, was not the proximate cause of complainant's injury.

(b) The evidence shows that the insurer made surveys of the job site and working conditions at intervals of one to three months and that oral reports were made to the superintendent on the job and written reports made to the insurer together with any recommendation, and whether or not these recommendations were followed were considered upon renewal of the policy, that is whether it would be renewed at all and if renewed whether the limits of liability would be reduced. The evidence was uncontradicted that no detailed inspections of machinery or equipment were contemplated or made, but only of things clearly observable as to working

conditions generally. Inspections were made on December 19, 1972, January 17, 1973, February 14, 1973, May 24, 1973, July 20, 1973 and October 10, 1973. The crane involved had what were called outriggers on each side, front and rear, operated hydraulically with oil. The outrigger arms were extended outward and then a vertical jack, also operated hydraulically, would be extended downward. The purpose of this was to steady and make secure the crane while in operation so that it would not turn over with heavy loads. These hydraulic arms and vertical jacks became inoperable because of oil leakage and when the crane was last used on the job, the arms were extended and cribbs made of 4 x 4 timbers were put underneath the arms to stabilize the crane. The evidence is in dispute as to whether this condition existed when the inspection was made on July 20, 1973, and if it did exist, the insurer's agent did not notice this condition. Prior to the injury which occurred on September 14, 1973, the crane had been idle 4 to 6 weeks, that is, from sometime in August, 1973. The three tires on the right side, had become flat a week or longer prior to the injury. During this time the bands on the drums on the crane, used to operate the boom, had become rusty. It was the duty of the crane operator to inspect the crane and keep it in operable condition. Union rules required an oiler to do most of this work but it was the duty of the crane operator to see that he did the job. While the crane was not in use the oiler had been let go. The complainant meantime was working on an elevator hoist at the building site. He was instructed by the superintendent to move the crane to level ground and dismantle the boom for the purpose of moving the crane to Atlanta. The superintendent instructed the foreman to air up and fix the tires. When the complainant came to move the crane for dismantling, the tires appeared normal. He moved the crane to fairly level ground with the boom pointing rearward but raised to an 85° angle with the ground. After stopping the crane he proceeded to rotate the boom from the rear to the front on the right hand side at the 85° angle and as the boom began to swing from back to front, the vehicle began to lean to the right. At that point complainant tried to return the boom to the rear position but because of the rusty

bands on the drum he was unable to return the boom to its rear position. As the vehicle continued to turn over complainant could see three tires on the right side were flat. Both the complainant and his superintendent considered it perfectly safe to rotate the boom, without a load, from front to back at an 85° position without using the outriggers and jack to stabilize the vehicle. It was uncontradicted that this was a common practice. The evidence was uncontradicted that the tires going flat caused the vehicle to turn on its side and injure the complainant.

While there is some evidence the vehicle was on the cribbs when the inspection or survey of July 20, 1973 was made, it does not appear from this evidence that the lack of operable condition of the outriggers was the proximate cause of the injury to the complainant. The complainant was proven to be an expert and he judged and testified the procedure used was safe without the use of the outriggers and so did his superintendent. He knew the outriggers were not operable when he operated the boom and he did so with full knowledge of this and cannot recover for this alleged negligence of the insurer, if any.

Other defects were the tires and the rusty bands on the drum. Both of these defects accrued between inspections or surveys by the insurer. The inflation of the tires was done by an agent of the employer while complainant completed his work on the hoist. Complainant himself admitted it was his duty to check the tires but he had no tire gauge to check the pressure. It follows from these facts that if there be any negligence as to the condition of the tires, that negligence does not lie with the insurer. The insurer was entitled to summary judgment.

*Judgment affirmed. Deen, P. J., concurs. Webb, J., concurs in the judgment only.*