## 54027. BEAM et al. v. OMARK INDUSTRIES, INC. et al.

QUILLIAN, Presiding Judge.

This is a products liability case arising out of injuries sustained by the appellant-plaintiff, due to the misfiring of an alleged defective "stud gun," manufactured by defendant Omark Industries, Inc., and locally distributed by defendant Builders Equipment Company, Inc. Both defendants moved for and were granted summary judgment. Plaintiffs appeal. We reverse. *Held:*

1. A "stud gun" is a firearm which uses a "power load" (a percussion cap with gunpowder) to propel a "fastner" (either a stud or a nail) into a steel or concrete wall. This gun will cause a nail to penetrate an object to be fastened to a concrete wall, and then penetrate the concrete wall up to a depth of one inch.

Plaintiff Beam was the foreman for A. C. Henderson, an electrical contractor, who purchased the "stud gun" from the defendant Builders Equipment. The gun was brought to the job site by a representative of Builders Equipment who gave "about two minutes" instruction on "how to load it and fire it." Plaintiff Beam stated he was instructed to put the "fastner" (a stud or nail) in the muzzle, and the "power load" (cartridge) in the chamber, then "put the muzzle in [the palm of] his left hand and heel of his [right] palm on the butt of the gun and close it [by pushing toward each other] and put it up against the slab and fire it." No brochure or operation pamphlet was given to him. The gun was brought to the job site "in a cardboard box," the same as a "box from a grocery shelf." It was not an Omark Industries box and contained no literature of any type.

The gun was fired approximately 300 to 400 times. It had misfired approximately 75 to 100 times. On the date plaintiff was injured, he could not get the gun to fire. He had changed the "load" a few times, and while he was attempting to close the gun — by holding it between the palm of his left hand and the heel of his right hand, the gun fired and a nail in the gun went through his left hand. He did not have his finger on the trigger.

Omark Industries' evidence showed they forwarded

their "stud gun" in a sealed container with a pamphlet inclosed listing "safety precautions." Some of the instructions were: "Use only Omark fasteners and power loads. . . Do not place hand over end of barrel. . . Loads other than the Omark 'A' type will not chamber properly in the 721 and could cause tool malfunction."

Plaintiffs' expert, Mr. Samples, examined the Omark 721 Gun which caused the injury, and found a "primer cap lodged in the trigger slot in the bottom of the breech block." He test-fired this weapon and a new Omark 721 gun with six different types of power loads. One significant finding was that "the cap on the primer end of the power load would be blown off and this happened on several occasions during the course of testing the new Omark gun and . . . all [power] loads including Omark's would pop the primer end off the cartridge from time to time and that when this would happen the cap would be left in the breach of the gun after the chamber was reopened."

Defendant's expert witness, Mr. Mirwald, was the product applications manager for Omark Industries and was responsible for the test department of Omark Industries. His examination of the gun which injured plaintiff also disclosed a broken off head from "a power load jammed in the trigger slot in the bottom of the breech block." That head had an "H" stamped on it. It was not an Omark power load. "H" was the identification mark of "Winchester Western," the manufacturer of a similar power tool.

Both experts were in apparent agreement as to the cause of the incident. When the gun fired, the breech block recoiled backward, the head of the foreign power load fell into the open breech chamber. When the breech block returned forward the cap prevented the breech block from fully closing in the forward position. This left the firing pin exposed in an extended position. After the gun was reloaded, it could not be fired by pulling the trigger as the breech assembly was not in a firing position. Apparently, when the plaintiff jammed the gun together, the firing pin made contact with the power load which exploded — causing the fastner to exit through plaintiff's hand.

Because this is a summary judgment issue we have

recited the facts in their most favorable light for the party opposing the motion — in this instance, the plaintiff. *Shutley v. Hite,* 118 Ga. App. 664 (165 SE2d 169). Further, all inferences from the evidence will be interpreted favorably toward making an issue of fact. *Bagley v. Firestone Tire &c. Co.,* 104 Ga. App. 736, 739 (123 SE2d 179). We must also consider that a summary judgment can not be based on opinion evidence alone, although opinion evidence can be sufficient to make a jury issue. *Ginn v. Morgan,* 225 Ga. 192, 193 (167 SE2d 393).

(a) Plaintiff proceeded against the manufacturer on the theory of strict liability. All that plaintiff was required to establish was "a defect" which was the proximate cause of the injury. *Center Chemical Co. v. Parzini,* 234 Ga. 868, 869 (218 SE2d 580). Plaintiff's expert, taking his testimony in its most favorable light, stated that it was his opinion "the reason the caps frequently blow off the power loads is because the instrument is not built with the same precision and tolerance as are most handguns" and in his opinion it "is a dangerous instrumentality."

This court has held that "ordinarily, the question whether a particular design is defective and could thus cause injury is for the jury." *Long Mfg. &c. Inc. v. Grady Tractor Co.,* 140 Ga. App. 320, 321 (231 SE2d 105). Eldridge, Products Liability in Ga. 22, § 2-11; 76 ALR2d 93. This evidence is sufficient to raise an issue for jury resolution. The court erred in granting summary judgment for defendant Omark Industries.

(b) Turning to the defendant distributor, we note that Omark Industries stated they shipped the Omark 721 gun in a sealed container with safety instructions. Plaintiffs' evidence showed it arrived at the job site in a "grocery box," without any literature. Accordingly, the user of the gun was deprived of necessary safety instructions, particularly those on "power loads" and use of the weapon. Further, plaintiff stated the distributor's representative instructed him to use the gun in a manner directly opposite to the safety instructions of the manufacturer.

This court has adopted as law, § 324A, Restatement of the Law 2d, Torts, which states: "One who undertakes, gratuitously or for consideration, to render services to

another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking." *Winslett v. Twin City Fire Ins. Co.,* 141 Ga. App. 143, 144 (232 SE2d 638). Did the retailer have a duty to advise potential users of necessary safety precautions and possible danger in the use or misuse of this product?

A manufacturer and retailer of a product which, to their actual or constructive knowledge, involves danger to users have a duty to give warning of such danger to the purchaser "at the time of sale and delivery." *Everhart v. Rich's, Inc.,* 229 Ga. 798 (1)(194 SE2d 425); 76 ALR2d 16. Cf. Johnson v. Ernest G. Beaudry Motor Co., 170 FSupp. 164, 169 (Ga. 1958). The sufficiency of that warning is for the jury. Eldridge, Products Liability in Ga. 39, § 2-24.

We cannot say as a matter of law that the distributor was not negligent in separating the gun from the safety instructions and instructing the plaintiff in a manner contrary to the missing safety instructions. Generally, questions of negligence, diligence, assumption of risk, and lack of ordinary care for one's own safety, are not susceptible of summary adjudication, but should be resolved by a trial in the ordinary manner. *Malin v. Jaggers,* 134 Ga. App. 806 (216 SE2d 666). Whether defendant's conduct in this instance amounted to negligence is for the trier of fact. The court erred in granting summary judgment for the defendant Builders Equipment Company.

2. Defendants argue that plaintiff is without privity, thus cannot maintain an action against the defendants. Plaintiff's action against the manufacturer is under the theory of strict liability. No privity is required. Code Ann. § 105-106 (Ga. L. 1968, pp. 1166, 1167). Our Supreme Court held in *Ellis v. Rich's, Inc.,* 233 Ga. 573 (212 SE2d 373), that Georgia formerly followed the traditional concept requiring proof of negligence in tort actions and

privity in contract actions based on warranties. However, our Uniform Commercial Code has extended vertical privity under contract only to the original purchaser and horizontal privity to "any natural person who is in the family or household . . . or who is a guest in his home if" stated conditions are met (Code Ann. § 109A-2—318; Ga. L. 1962, pp. 156, 191), but privity is not extended to an employee of the purchaser. *Weaver v. Ralston Motor Hotel, Inc.,* 135 Ga. App. 536, 539 (218 SE2d 260).

Georgia L. 1968, p. 1166, amended Code § 105-106 to provide: "No privity is necessary to support an action for a tort; but if the tort results from the violation of a duty, itself the consequence of a contract, the right of action is confined to the parties and privies to that contract, except in cases where the party would have had a right of action for the injury done, independently of the contract. . ." The duty to warn the consumer here arose out of contract — thus, privity would be required unless plaintiff comes within the last stated exception, i.e. those cases where the party would have had a right of action independent of the contract. Stated another way, in order to maintain an ex delicto action involving a contractual relation because of a breach of duty, the breach must be shown to have been a duty imposed by law, and not a breach of duty imposed by the contract itself. *Long v. Jim Letts Olds., Inc.,* 135 Ga. App. 293, 294 (217 SE2d 602).

For an excellent review of the basis of the requirement of privity in contract actions against a manufacturer and seller of a product alleged to have caused injury, see Annot. 74 ALR2d 1125. Therein it is shown that one of the earliest exceptions to the general rule requiring privity in such actions involved a product which is "dangerous by nature." Thomas v. Winchester, 6 N. Y. 397 (57 AD 455) (1852); Annot. 74 ALR2d 1127. The best known example of this exception is MacPherson v. Buick Motor Co., 217 NY 382 (111 NE 1050), wherein Justice Cardozo expanded the dangerous product rule. See *Simmons Co. v. Hardin,* 75 Ga. App. 420, 426 (43 SE2d 553). It is a jury question as to whether the Omark 721 gun was "dangerous by nature" or because of defective con - struction became "imminently dangerous." Id. p. 430.

This court in *J. C. Lewis Motor Co. v. Williams,* 85 Ga.

.

App. 538 (69 SE2d 816), an action against a retail seller, held that if negligence on the part of the seller was established, plaintiff would be entitled to recover, notwithstanding she was not the purchaser and was without privity. This court adopted Restatement of the Law of Torts, § 388, which states: "One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or [expect] to be in the vicinity of its probable use, for bodily harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier (a) knows, or from the facts known to him should realize, that the chattel is or is likely to be dangerous for the use for which it is supplied; (b) and has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition: and (c) fails to exercise reasonable care to inform them of its dangerous condition or the facts which make it likely to be so." Id. p. 542. Accord, *Moody v. Martin Motor Co.,* 76 Ga. App. 456, 459 (46 SE2d 197); *Flint Explosive Co. v. Edwards,* 84 Ga. App. 376 (66 SE2d 368); *Smith v. Clarke Hardware Co.,* 100 Ga. 163, 167 (28 SE 73); see also Annot. 76 ALR2d 16, 63 AmJur2d 176, Products Liability, § 174. The supplier here should have known from the literature provided with the product that the Omark 721 should use only Omark power loads and use of other brands would not chamber properly, causing tool malfunction. Failure to provide the "safety" literature or to inform users of this condition which a user would have no possibility of knowing, was the duty of a supplier or distributor of a potentially dangerous product. The defendant distributor breached this duty to the purchaser — which is based in tort, not contract law. *Kuhr Bros. v. Spahos,* 89 Ga. App. 885, 888 (2) (81 SE2d 491); *Higdon v. Ga. Winn-Dixie, Inc.,* 112 Ga. App. 500, 504 (145 SE2d 808).

Accordingly, as the retailer had a duty to warn potential users of the "stud gun" of necessary safety precautions and potentially dangerous use of the gun, because of the dangerous nature of the product, privity between the retailer and user was not required, where the action was based in tort. *King Hardware Co. v. Ennis,* 39

Ga. App. 355, 363 (6) (147 SE 119); *J. C. Lewis Motor Co. v. Williams,* 85 Ga. App. 538, supra; *Griffith v. Chevrolet Motor Division,* 105 Ga. App. 588, 591 (125 SE2d 525); *Winslett v. Twin City Fire Ins. Co.,* 141 Ga. App. 143, 144, supra; see generally 63 AmJur2d 176, Products Liability, § 174; 74 ALR2d 1141, § 7(a); Eldridge, Products Liability in Ga. 33, § 2-20.

The trial court erred in granting summary judgment for both defendants.

*Judgment reversed. Shulman and Banke, JJ., concur.*

ARGUED JUNE 8, 1977 — DECIDED JULY 8, 1977 — REHEARING DENIED JULY 29, 1977 —

*Alford Wall, Charles B. Rice,* for appellants.
*Van Gerpen & Bovis, John V. Burch, Nall, Miller & Cadenhead, James S. Owens, Jr.,* for appellees.