58898. ARGONAUT INSURANCE COMPANY et al. v. CLARK et al.

SOGNIER, Judge.

This interlocutory appeal arises from litigation involving an accident in which Phillip Clark was injured while working in the course and scope of his employment by Hensel Phelps Construction Company. The appellant-insurers provided both workers' compensation and liability insurance for Hensel Phelps, and Clark had previously been awarded workers' compensation benefits. The instant suit was filed by Clark and his wife under the theory first enunciated in *Sims v. American Cas. Co.,* 131 Ga. App. 461 (206

SE2d 121) (1974), affd. sub nom *Providence Washington Ins. Co. v. Sims,* 232 Ga. 787 (209 SE2d 61) (1974), that under certain circumstances a cause of action may also exist against a liability insurer for negligently conducted safety inspections. The appeal is from the trial court's denial of appellants' motions for summary judgment.

Clark was injured when a front-end loader or back-hoe, which was positioned on loose and sloping soil with its tracks extended partially off the soil and out over the slope, slid down the slope and tilted over while Clark and another employee were standing in its bucket performing construction work. Clark's complaint alleged that the insurer made safety inspections of the work site, both pursuant to the provisions of the insurance policies and as a service performed independently of the contract; that these inspections were made not only to rate the risks but to assist Hensel Phelps in reducing accidents and losses and to protect the lives, health and safety of Hensel Phelps' employees; that both Clark and Hensel Phelps relied upon these inspections; that the inspections were negligently made and were not performed with reasonable care and skill; and that he was injured as a result of the insurer's negligent inspections.

1. The insurer contends that all inspections were performed solely with respect to the workers' compensation coverage. "Where an insurer issues both workmen's compensation and public liability insurance policies but limits its inspections of insured's premises to its role of workmen's compensation carrier, it is entitled as the employer's alter ego to the immunity afforded the employer under the Workmen's Compensation Act as against tort claims of insured employees. [Cit.]" *Newton v. Liberty Mut. Ins. Co.,* 148 Ga. App. 694 (1) (252 SE2d 199) (1979). However, since the standard safety inspection reports prepared by appellants refer to both the workers' compensation and liability insurance policy numbers, and appellants' inspector testified that he made the inspections to detect unsafe conditions and to help avoid accidents to the public as well as to the workers, it cannot be assumed as a matter of law that appellants were not subject to liability as third party tortfeasors under Code Ann. § 114-103 for alleged negligence in making safety inspections. *Newton v. Liberty Mut. Ins. Co.,* 148 Ga. App. 694 (2), supra.

2. In considering whether under the facts of the case an insurer was liable in common law tort for the negligent safety inspection of the premises, this court has since *Sims v. American Cas. Co.,* 131 Ga. App. 461, supra, and its progeny approved and adopted the standards set forth in § 324A of the Restatement,

Second Torts, which provides as follows: "One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of such harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

Subparagraph (a) applies only when a nonhazardous condition is made hazardous through the negligence of a person who changed its condition or caused it to be changed. The illustration given by the Restatement is that *A* store calls *B* electric company to repair a defective light hanging over one of the aisles of the store. *B*'s workman repairs the light, but leaves the fixture so loosely attached that it falls upon and injures *C*, a customer in the store who is walking down the aisle. *B* is liable to *C*.

The evidence is undisputed in the instant case that until shortly before the incident in which Phillip Clark was injured the loader had been operating on level ground; that the loose dirt on which the loader was positioned had not been piled up until 11 or 11:30 a.m., the loader was moved at approximately 2 p.m., and the incident occurred that afternoon; that the loader tilted and slid down the slope because it was positioned on loose dirt which gave way under it; that Clark knew from safety meetings conducted by his employer that loose dirt should be tamped before moving heavy equipment such as the loader onto it; that Clark knew the dirt on which the loader was positioned had not been tamped and was loose, and that the loader was on a slope; that Clark was working from the bucket of the loader on the express instructions of his employer and was observed performing the work by supervisory personnel of Hensel Phelps; and that the insurer's safety inspector did not arrive at the construction site until after Clark was injured, at which time he then advised the Hensel Phelps safety officer that "using a front-end loader in that capacity was a dangerous thing to do and that henceforth . . . to make sure it doesn't happen again." It is clear from these facts that the insurer in no way created a hazardous condition or increased the risk of an existing condition. See *Smith v. Ammons,* 125 Ga. App. 69 (1, 2) (186 SE2d 469) (1971), affd., 228 Ga. 855 (188 SE2d 866) (1972). Subparagraph (a) is inapplicable here.

Subparagraph (b) of the Restatement of Torts is likewise not controlling. The evidence established that the insurer had no

contractual obligation nor agreement to supervise the project premises or construction activities, that Hensel Phelps provided engineers, safety supervisors and safety officers to supervise matters of the safety of its employees' activities, including supervision and inspection, and that the insurer neither had, nor assumed, the authority to supervise or direct the employees of Hensel Phelps in the manner in which they performed construction work and activities. This provision would apply only had the insurer contracted or agreed to supervise the construction work for Hensel Phelps and then performed negligently so as to cause the injury to Clark. See *Norair Eng. Corp. v. St. Joseph's Hospital,* 147 Ga. App. 595, 599 (2) (249 SE2d 642) (1978).

Potential liability arises under subparagraph (c) if "the harm is suffered because of the reliance of the other or the third person upon the undertaking." The illustrations of such situations given in the Restatement are two of the most typical of such cases: negligent inspection of elevators by a third person where the owner of the building relies on the other's report that the elevator is in good condition, and failure of a crossing guard employed by the railroad to warn of approaching trains. See, e.g., *Higgins v. Otis Elevator Co.,* 69 Ga. App. 584 (26 SE2d 380) (1943); *Chumley v. L. & N. R. Co.,* 45 Ga. App. 732 (165 SE 917) (1932).

While Clark has alleged that he and Hensel Phelps relied upon the insurer's safety inspections, he does not assert that there was an unsafe and concealed condition on the premises of which the safety inspector possessed or should have possessed a superior knowledge as a result of his inspections. This is the crux of such actions, dating back to early cases involving steam boiler explosions and defects in or malfunctioning of other such inherently dangerous equipment or materials. E.g., Van Winkle v. American Steam-Boiler Ins. Co., 19 A 472 (N. J. 1890); Hartford Steam Boiler Inspection & Ins. Co. v. Pabst Brewing Co., 201 F 617 (7th Cir. 1912); *Southeastern Elevator Co. v. Phelps,* 70 Ga. App. 331 (28 SE2d 85) (1943); *Womack v. Central Ga. Gas Co.,* 85 Ga. App. 799 (70 SE2d 398) (1952); *Sims v. American Cas. Co.,* 131 Ga. App. 461, supra, and numerous cases cited therein; *Aetna Cas. &c. Co. v. C. P. Co.,* 134 Ga. App. 552 (215 SE2d 314) (1975); *U. S. Fire Ins. Co. v. Day,* 136 Ga. App. 359 (221 SE2d 467) (1975); *Penn. &c. Ins. Co. v. Thomas Milling Co.,* 137 Ga. App. 430 (224 SE2d 55) (1976); *Winslett v. Twin City Fire Ins. Co.,* 141 Ga. App. 143 (232 SE2d 638 (1977); *Redwing Carriers, Inc. v. Travelers Ins. Co.,* 147 Ga. App. 872 (250 SE2d 580) (1978); *St. Paul Fire &c. Ins. Co. v. Davidson,* 148 Ga. App. 82 (251 SE2d 32) (1978); *Newton v. Liberty Mut. Ins. Co.,* 148 Ga. App. 694, supra; *Huggins v. Aetna Cas. &c. Co.* 245 Ga. 248 (264 SE2d 191) (1980).

Clark complains only of the work activities and procedures specifically ordered by his employer and, in contrast to the decisions upon which he relies, both he and his employer had full knowledge of the work to be undertaken and the circumstances under which it was to be done. Thus, even assuming that either Clark or Hensel Phelps relied upon the safety inspections of the insurer, the question arises as to what risks the insurer is being charged with negligently failing to warn of or discover.

The decisive factor is the nature of an insurer's duty to inspect as opposed to the duty to supervise owed to the employees of the insured. When an employer delegates its duty to properly supervise its employees' work activities to an insurer, the insurer can be held to have breached a duty which proximately resulted in injury to the employee. In the instant case, however, as in Tillman v. Travelers Indemnity Co., 506 F2d 917, 921 (5th Cir., 1975) and cases considered therein, "the employer had a legal obligation to exercise reasonable care in maintaining a safe place in which its employees could work. [Cit.] In each case the employer had its own safety program and consulted with a representative of the insurer regarding recommendations for safety improvements. More importantly, in each case the record was void of any indication that the employer had delegated to the insurer any part of its direct and primary duty to discover unsafe conditions. Proof that the insurer conducted its own safety inspections and consulted with the employer afterwards 'falls far short of systemwide assumption of . . . [the employer's] duty to discover . . . hazards [cit.]." Under such circumstances an insurer does not owe an employee a legal duty to warn him or his employer of conditions which he and his employer had a greater opportunity to discover, and which involve the manner and circumstances under which the employees are directed to perform their work rather than defects in equipment or concealed hazards on the premises.

This is not to say that an insurer is not to inspect to observe compliance with safety procedures, but that it has no duty to report those hazards which it did not see or of which it had no superior knowledge. *Winslett v. Twin City Fire Ins. Co.*, 141 Ga. App. 143 (1(b)), supra. While an insurer, as well as anyone else, should be held accountable for injuries proximately caused by its own negligence, the attempt to substitute the insurer for the insured so as to hold the insurer accountable for the negligence of the insured involves an entirely different legal theory of liability. We therefore hold that an actionable count based upon reliance by the employee or employer on the defendant's negligent safety inspections, where the duty to *supervise* has not been delegated to the defendant, must

allege and prove that the defendant failed to report unsafe working conditions after having observed them.

Since Clark did not contend that the insurer observed but failed to report the hazardous position of the loader, and it is undisputed that the loader was placed there and Clark ordered to work on it by the employer, thereby precipitating Clark's injury before the insurer's safety inspector arrived for his daily visit to the construction site, the requisite negligence of the insurer was not alleged nor was there any support for such a proposition in the affidavits and testimony before the court. Accordingly, it was error to deny the insurer's motions for summary judgment.

*Judgment reversed. McMurray, P. J., and Banke, J., concur.*

ARGUED OCTOBER 31, 1979 — DECIDED MARCH 18, 1980 —
REHEARING DENIED MARCH 31, 1980 —

*M. D. McLendon, A. Terry Sorrells,* for appellants.
*W. Fred Orr, II, James G. Edwards, II,* for appellees.