**FIRST DIVISION**
**DOYLE, C. J.,**
**PHIPPS, P. J, and BOGGS, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**November 19, 2015**

# In the Court of Appeals of Georgia

A15A0960. KEY SAFETY SYSTEMS, INC. v. BRUNER et al.        DO-047

DOYLE, Chief Judge.

This appeal arises out of the death of Penney Louise Bruner after the Jeep Wrangler automobile in which she was riding in the front passenger seat was involved in a rollover crash, ejecting her despite her wearing the seatbelt, which was designed, constructed, and integrated into the Jeep by Key Safety Systems, Inc. ("Key").[1] William A. Bruner, Individually and as Personal Representative of the Estate of Ms. Bruner (collectively "the plaintiff"), filed suit against Key and various other private and governmental entities, alleging claims of failure to warn, failure to recall/retrofit, strict products liability, and negligence regarding the seatbelt restraint

---

[1] DaimlerChrysler AG ("Chrysler"), which manufactured the Jeep, was not a party to the litigation.

system installed in the passenger side of the Jeep. The jury awarded over $4.6 million to the plaintiff, apportioning 80 percent fault to Key and 20 percent to the driver, Mr. and Ms. Bruner's daughter, Amanda. Key filed a motion for new trial, motion for judgment notwithstanding the verdict, and a revised motion for new trial, which motions were denied by the trial court.

Key appeals, arguing that the trial court erred by (1) denying its motions for directed verdict and for judgment notwithstanding the verdict as to the plaintiff's failure to warn claim; (2) admitting expert testimony regarding certain seatbelt retractor mechanism testing over its objection at the motion in limine and at trial; and (3) allowing the jury to view the video of that same test over its objection at the motion in limine and at trial. For the reasons that follow, we affirm.

> The standard for [a] directed verdict is as follows: [If] there is no conflict in the evidence as to any material issue, and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict, such verdict shall be directed. The appellate review standard of a trial court's denial of a directed verdict motion is the any evidence standard. In considering a ruling on a motion for directed

verdict, the evidence must be construed most favorably to the party opposing the motion.[2]

Viewed in this light, the record shows that Mr. Bruner owned three vehicles at the time of the instant events, the 2003 Jeep in question, as well as a 2000 Volkswagon Beetle and a Ford F-150 pickup truck. Mr. Bruner testified that among his family of two adults and two driver-aged children, all four were allowed to operate the Jeep, but he was the main driver. His daughter, Amanda, was 17 at the time of the events but driving on a learner's permit.

On September 23, 2007, Amanda and Ms. Bruner were involved in a rollover accident in the Jeep.[3] Amanda was driving, while Ms. Bruner rode in the passenger seat, and although both were wearing their seatbelts, Ms. Bruner was ejected from the vehicle, sustaining severe injuries, including having portions of body tissue around her lower abdomen and upper legs torn off by the lap portion of the seatbelt. Ms. Bruner survived for a short time after the accident, telling witnesses that she was

---

[2] (Citations and punctuation omitted.) *Wilson Foods Corp. v. Turner*, 218 Ga. App. 74 (1) (460 SE2d 532) (1995).

[3] Investigators never determined what caused the Jeep to leave the roadway.

confused about why she was ejected because she had been wearing her seatbelt. Ms. Bruner eventually succumbed to her injuries.

Mr. Bruner testified that Ms. Bruner was "fanatical" about proper seatbelt usage, which made it surprising to him that the police at the scene initially reported that she was unbelted. He testified that in the event of a rollover, he "expected [the seatbelts] to keep you in the seat" and if he had known that there was a chance of ejection, he would not have purchased the vehicle. Mr. Bruner testified that he was not warned that properly belted occupants could be ejected from the vehicle, but if a warning had appeared on the belt, he would have read it. Mr. Bruner could not recall whether he "as part of the accident" read the Jeep's owner's manual, nor could he recall what other vehicles he was considering at the time he bought the Jeep.

Steven Meyer, a mechanical engineer, testified regarding the seatbelt retractor mechanism and its behavior during a rollover accident. After speaking generally about the variety of tests he had performed on various types of restraint systems, Meyer turned to the restraint system in question and his hypothesis of the accident. Meyer explained that the latch plate at the top portion of the shoulder belt became loose at various points during the rollover, which allowed slack to form in the lap belt, which then allowed Ms. Bruner to be ejected from the vehicle. In arriving at his

4

conclusion that the seatbelt restraint system was defective, he examined the belt in question and compared it to his existing knowledge gleaned from previous investigations.

Meyer described the restraint system in question as having a ball and cup crash sensor, which was designed to sense when the vehicle was in an accident and lock the seatbelt retractor from allowing any movement of the belt; he compared the device in the passenger side to other crash sensors, such as the web sensor or locking latch plate, which operated differently than the ball and cup.

During his testimony, Meyer referred to a video of the internal workings of a seatbelt retractor mechanism like the one installed in the plaintiff's Jeep. The video included a closeup of the mechanism showing when it detached from the belt, allegedly allowing slack to form in the belt, and in the corner of the screen the front of a Jeep Cherokee rolling to show the angle of the vehicle during the detachment of the restraint from the belt. Meyer repeatedly explained that this was not designed to be a simulation of the exact events of the crash in question, but merely a visual depiction of how the restraint system operates under rollover forces; he explained how it would vary given different rates or directions of rotation.

At the close of evidence, Key argued that the trial court should grant a directed verdict on the plaintiff's claim of failure to warn because (1) the plaintiff had failed to show causation via evidence showing what product he would have purchased instead of the Jeep had he been warned; (2) the plaintiff had not produced evidence of an appropriate warning; and (3) the plaintiff had not produced evidence that Chrysler would have allowed Key to add a warning to the product.

After the verdict, Key filed its revised motion for new trial, arguing, among other things, that the trial court erred by allowing the plaintiff's expert to present the retractor rotation test and that the trial court improperly allowed the failure to warn claim to go to the jury because there was insufficient evidence to support the claim. The trial court denied the motion, and this appeal followed.

1. Key first argues that the trial court erred by denying its motions for a directed verdict and for judgment notwithstanding the verdict on the plaintiff's failure to warn claim because there was insufficient evidence to establish a claim.

> [If] a duty to warn arises, as it does in this case, this duty may be
> breached by (1) failing to adequately communicate the warning to the
> ultimate user or (2) failing to provide an adequate warning of the
> product's potential risks. While failure to read instructions or printed
> warnings will prevent a plaintiff from recovering on a claim grounded
> on failure to provide adequate warning of the product's potential risk,

failure to read a warning does not bar recovery when the plaintiff is challenging the adequacy of the efforts of the manufacturer or seller to communicate the dangers of the product to the buyer or user. Failure to communicate an adequate warning involves such questions, as are here at issue, as to location and presentation of the warning.[4]

Moreover, "such suits are grounded on either a strict liability or negligence theory, [and] proximate cause is a necessary element of the plaintiff's case."[5] Questions of adequacy of a warning and proximate cause resulting from a complete lack of warning or an inadequate warning are "peculiarly questions for the jury."[6]

Key contends that the trial court should have granted its motions because the plaintiff failed to present sufficient proof of proximate cause. Key argues that there was insufficient proof that a warning would have avoided injury, i.e., that the plaintiff would have purchased a different vehicle. In support of this argument, Key cites evidence it presented at trial that (1) no other vehicle sold at that time had a different restraint mechanism such as a locking latch plate; and (2) vehicles with web sensors sold in the United States at that time were not set to be triggered during a rollover

---

[4] (Citations and punctuation omitted.) *Wilson Foods*, 218 Ga. App. at 75 (1).

[5] Id.

[6] Id.

7

crash. Key also contends that Mr. Bruner's testimony that he would have purchased a different car had an adequate warning been provided is too speculative to support his claim.

As an initial matter, the fact that alternative belting mechanisms may or may not have been produced at that time is beside the point. Mr. Bruner could have selected any number of different vehicles that would have been less likely to have a rollover occur than the Jeep had he been appropriately apprised of the risk of ejection despite proper belting. The defendant cites to no prior precedent requiring a plaintiff alleging a failure to warn claim to provide evidence of the particular alternate products he would have chosen had an "adequate" warning been included, and we decline to adopt such a requirement at this time.

Despite Key's argument that Mr. Bruner's testimony is insufficient, such testimony has been upheld as legally sufficient to create a question of fact.[7] Moreover, in addition to Mr. Bruner's testimony, the plaintiff also presented

_____

[7] See *Morris v. Harley Davidson Motor Co.*, Case No. 3:09-CV-74 *10 (III) (M. D. Ga., Jul. 07, 2010); *Thomas v. Hubtex Mashinenbau GmbH & Co. KG*, Case No. 7:06-CV-81 *31-34 (II) (4) (M. D. Ga., Sept. 23, 2008) (denying motion for summary judgment as to failure to warn claim because a fact question existed as to proximate cause based on the employer's testimony that it communicated product warnings to employees and that plaintiff was a safe employee).

testimony of a witness at the scene of the accident who heard Ms. Bruner's dying declarations as she tried to grasp why she had been ejected from the vehicle when she had been properly belted. Coupled with Mr. Bruner's testimony that Ms. Bruner was emphatic about seatbelt usage, this testimony authorized a finding that Ms. Bruner did not understand that a risk still existed for ejection when an occupant of a vehicle is properly belted or that an adequate warning by Key would have prevented the harm.

To the extent that Key argues that Chrysler's warning in its owner's manual was adequate and thus, Key had no additional duty to warn, Key failed to raise this issue at trial. Accordingly, this argument presents nothing for this Court to review on appeal.[8] And even assuming that this issue was before us, the argument made by Key is one of adequacy, which would be a fact question for the jury.[9] To the extent that

---

[8] See, e.g., *Sherman v. Dev. Auth. of Fulton Co.*, 320 Ga. App. 689, 695-696 (4) (740 SE2d 663) (2013) ("The law in Georgia is that because the appellate courts are for correction of errors of law, issues which have not been ruled on by the trial court may not be raised on appeal.") (punctuation omitted).

[9] See *Camden Oil Co. v. Jackson*, 270 Ga. App. 837, 841-843 (1) (b) (609 SE2d 356) (2004) (failure to adequately communicate a warning is not defeated by a plaintiff's failure to read existing warnings); *Thornton v. E.I. Du Pont De Nemours & Co.*, 22 F.3d 284, 289 (III) (b) (1994) ("The general rule in Georgia is that the adequacy of the warning is an issue for the jury. Whether adequate efforts were made to communicate a warning to the ultimate user and whether the warning if communicated was adequate are uniformly held questions for the jury."); *Beam v. Omark Indust., Inc.*, 143 Ga. App. 142, 145 (1) (237 SE2d 607) (1977).

Key argues that its duty to warn was nullified because Chrysler would have prevented them from adding a warning, it is without moment. Key's duty is determined as a matter of law and not as a matter of Chrysler's rules.[10]

2. In two enumerations of error Key contends that the trial court erred by admitting Meyer's testimony about and video of simulations regarding the effect of certain rotational forces on the seatbelt retractor mechanism over Key's objection at the motion in limine and at trial.

> Models, maps, sketches, and diagrams (as distinguished from duplicates) are by their nature generally not confusable with real evidence, and are admissible simply on the basis of testimony that they are substantially accurate representations of what the witness is endeavoring to describe. Some discretionary control in the trial court is generally deemed appropriate, however, since exhibits of this kind, due to inaccuracies, variations of scale, etc., may on occasion be more misleading than helpful. Nevertheless, when the trial court has exercised its discretion to admit, it will only rarely be found in error, at least if potentially misleading inaccuracies have been pointed out by witnesses for the proponent, or could have been exposed upon cross-examination.[11]

---

[10] See *Giordano v. Ford Motor Co.*, 165 Ga. App. 644, 644-645 (1) (299 SE2d 897) (1983).

[11] (Punctuation omitted.) *J. B. Hunt Transp., Inc. v. Brown*, 236 Ga. App. 634, 636 (1) (b) (512 SE2d 34) (1999), quoting *McCormick on Evidence*, § 213, pp. 12-13.

In this instance, the simulation in question was not produced in order to recreate the exact accident, which Meyer testified was not possible; instead, it was produced in order to explain certain scientific principals, which Key's expert agreed it did. The hypothesized accident variables, such as vehicle roll rate and angle of the seatbelt retractor at impact, which Key contends the video failed to reproduce, were thoroughly explained to the jury during Meyer's testimony and the testimony of Key's expert.

> Use of a videotape by an expert to illustrate the expert's testimony is generally permissible. Here, [Meyer] created a model to explicate certain [principles of physics] and taped a demonstration of those principles in action. The transcript indicates that the video[] was used for demonstrative purposes only, and contrary to [Key's] claim, the record does not reflect its admission in evidence. There was no error.[12]

*Judgment affirmed. Phipps, P. J., and Boggs, J., concur.*

---

[12] (Footnote omitted.) *Cottrell, Inc. v. Williams*, 266 Ga. App. 357, 363-364 (2) (b) (596 SE2d 789) (2004).