12246. FLEETWOOD *v.* SWIFT & COMPANY.

</div>

1. A retailer, or one acting as the mere distributor to the retail trade, of a food product contained in unbroken packages as put up by and procured from a reputable dealer, distributor, or manufacturer, is not prima facie liable in damages to a consumer for injuries occasioned by a deleterious condition of the product, since he could not in the exercise of ordinary diligence be expected to open for inspection the individual packages thus prepared by another; but in an action against either the retailer or the distributor, upon proof of such an injury and that the product was handled by the defendant,

he is required to show his own diligence to the extent that he in good faith purchased the merchandise from a reputable dealer, distributor, or manufacturer, as an article reasonably sound and safe for the use intended. Especially is this true where the package containing the product fails to disclose the identity of the manufacturer or packer responsible for the quality and condition of the product. *Atlanta Coca-Cola Bottling Co.* v. *Danneman*, 25 *Ga. App.* 43 (3) (102 S. E. 542); *Payne* v. *Rome Coca-Cola Bottling, Co.*, 10 *Ga. App.* 762 (73 S. E. 1087).

2. The plaintiff having brought a common-law action for damages on account of alleged negligence of the defendant in packing and distributing the food product, and not having set up or invoked the criminal provisions of the State " pure-food law," nor alleged any acts constituting a violation thereof, the case must be tried and determined upon the basis of the issues raised by the evidence under the pleadings, and the plaintiff cannot be permitted in his exceptions to go outside of the issues to which he is thus confined. *Flessher* v. Carstens Packing Co., 81 Wash. 241 (142 Pac. 694); Hoffman *v.* Watkins, 78 Wash. 118 (138 Pac. 664); Acres *v.* Frederick, 79 Wash. 402 (140 Pac. 370).

<div align="center">DECIDED OCTOBER 24, 1921.</div>

Action for damages; from Colquitt superior court — Judge Thomas. January 18, 1921.

Application for certiorari was denied by the Supreme Court.

This action was for damages on account of certain injuries to the plaintiff and certain expenses connected with the illness and burial of his infant child, all alleged to have been occasioned by the part consumption of a package of butter, containing a decomposed mouse-head, which the plaintiff had bought of a local firm of retail grocers, branded as "Brookfield Creamery Butter," and which had been packed and distributed to the grocer for retail sale by the defendant, Swift & Company. By paragraph 2 of the petition, it is alleged that: "Said defendant is engaged in the business of manufacturing, packing, and selling to the retail dealers, for sale by them to the general public, meats and other products, including butter, to be used as food, and did prior to the 4th day of July, 1919, pack and distribute certain butter or compound branded by said defendant as 'Brookfield Creamery Butter,' in cartons containing one pound net weight." The defendant, in answer to this paragraph, pleaded as follows: "In answer to paragraph 2 of plaintiff's petition, this defendant admits the following portion of said petition, to wit: 'Said defendant is engaged in the business of manufacturing, packing, and selling to the retail dealers, for sale by them to the general public, meats and other products, including butter, to be used as food,' but this

defendant denies the remainder of said paragraph." The defendant denied all allegations of the petition setting up damage to the plaintiff and liability on its part, and denied that "any of said items sued for are traceable to, or in any wise due to, negligence on the part of this defendant." On the trial the evidence of the grocerymen showed: that the package of butter sold by them to the plaintiff on July 4, 1919, had been purchased from the defendant, Swift & Company, on June 27, 1919, as a portion of a 60-pound order; that the butter was packed in 1-pound cartons after each cake had been wrapped in tissue paper; that these pound packages were shipped together in one large carton or box, and that when received by them the merchandise appeared to be in the same condition as when manufactured and placed in the cartons. The carton which contained the butter sold to the plaintiff was introduced in evidence, and upon it was printed: *"Brookfield Creamery Butter.* One pound net weight. The within contents weighed one pound when packed. Owing to the natural shrinkage due to evaporation and other causes, the contents are not guaranteed to weigh, at the time of sale, the amount marked on the package, but the sale is made at the packed weight. [Signed] Swift & Company, U. S., Distributors." The evidence for the plaintiff was such as could be taken to establish an injury to the plaintiff, occasioned by the existence of the alleged deleterious substance. Upon the conclusion of the testimony offered in his behalf, a nonsuit was granted.

*Dowling & Askew,* for plaintiff. *Hill & Gibson,* contra.

JENKINS, P. J. (After stating the foregoing facts.) It is the contention of the defendant that the nonsuit was proper, on the theory that, since the defendant in its answer has denied that it manufactured or packed the shipment, and since, as he contends, the plaintiff's evidence shows that the defendant was but the mere distributor of the merchandise, the defendant could not be held liable for any negligence, since it could not be the duty of a mere distributor to open up, cut into, and inspect the sealed packages; and it is urged that, without doing so, there could manifestly be nothing to indicate the deleterious nature of the contents of the sealed packages. We agree in large part with the position taken by counsel for defendant. In Ruling Case Law, Vol. 11, p. 1124, § 29, the rule is stated as follows: "The

early rules of law were formulated upon the theory that the provision dealer and the victualer, having an opportunity to observe and inspect the appearance and quality ·of the food products offered to the public, were accordingly charged with knowledge of their imperfections. But no knowledge of the original or present contents of a perfect appearing can or sealed package is possible in the practical use of such products. They cannot be chemically analyzed every time they are used. Accordingly, the reason for the rule having ceased, a new rule should be applied to the sale and use of packed goods that will more nearly harmonize with what is rational and just. While there is authority to the contrary, it comports better with justice to hold that where a dealer sells to his customer an article in the original package in which it is put up by the manufacturer, and the customer knows as much about the article as the dealer, and buys it without any representation from the dealer or reliance upon his judgment, knowing that there has been no inspection of it by the dealer, there is no implied warranty, although the dealer knows that the customer buys it for food. No rule of law should imply a warranty of that which it is impossible for a defendant to know by the exercise of any skill, industry or investigation, however great. In other words, neither law nor reason should require impossibilities. Accordingly, it has been held that a retailer of mill feed in original packages is not liable for injury to the cattle of a customer because of glass in the food, if the customer did not rely on the retailer's judgment as to the fitness of the food, and he made no inspection of the material and had no notice of its unfitness. The situation of the retailer and consumer of packed products is properly governed by the rules of negligence law. The retailer owes to the consumer the duty to supply goods packed by reliable manufacturers, and such as are without imperfections that may be discovered by an exercise of the care, skill and experience of dealers in such products generally. This is the measure of the retailer's duty, and if he has discharged it, he should not be mulcted in damages because injuries may be produced by unwholesomeness of the goods. As to hidden imperfections, the consumer must be deemed to have relied on the care of the packer or manufacturer or the warranty which is held to be implied by the latter."

It would seem to be true, as contended by the defendant, that the evidence fails to show that Swift & Company was the manufacturer or the packer of the merchandise. While the fact that it was received by the retail grocer in unbroken sealed packages cannot be taken to throw any light upon who manufactured or packed the product, still the statement printed on the carton, that Swift & Company is distributor thereof, would seem to limit Swift & Company's connection with it. If, under the evidence, it could be taken as shown that the defendant, over its name, had impressed the packages with its own individual trade or proprietary brand, this would be equivalent to vouching for the product as its own. We do not think, however, that merely professing to act as distributor of a named brand of a commodity, and guaranteeing the correctness of the weight when packed, can be construed as an adoption by the defendant of the product as its own, or as throwing light upon the identity of the manufacturer or packer. There is no other evidence going to show that, at the time the purchase by plaintiff was made, the defendant was engaged in manufacturing or packing butter under the designated trade name. We do think, however, that, since the evidence is undisputed that the article was actually handled by the defendant, it was incumbent on it to exculpate itself to the extent of showing that it had in good faith procured the article from some reputable manufacturer, distributor, or dealer, as an article reasonably safe for the use intended, especially so since there is nothing on the package to indicate who, as manufacturer or packer, was ultimately responsible for the alleged tort.

*Judgment reversed. Stephens and Hill, JJ., concur.*