26772. DAVIS *v.* WILLIAMS *et al.*

DECIDED JUNE 24, 1938.   REHEARING DENIED JULY 21, 1938.

*Highsmith & Highsmith, I. J. Bussell,* for plaintiff.
*Wilson, Bennett, Pedrick & Bennett,* for defendants.

MACINTYRE, J.   R. L. Davis brought this suit against W. L. Williams trading as Dixie Service Stores (hereinafter referred to as the dealer), and the Waycross Coca-Cola Bottling Company (hereinafter referred to as the manufacturer), for recovery of damages by reason of injuries received from drinking of the contents of a bottle of coca-cola which contained particles of glass. W. L. Williams is a resident of Bacon County, and operates a retail store there in which coca-cola is sold.   The Waycross Coca-Cola Bottling Company, having its principal office and place of business in Waycross, Ware County, Georgia, and having no legal residence in Bacon County, was engaged in the bottling business, and sold and delivered to W. L. Williams the bottle of coca-cola from which the plaintiff received his injury.   The defendants were sued as joint tort-feasors in the superior court of Bacon County. The petition in part alleges:   "The said drink known as coca-cola is bottled and sold in glass bottles of uniform size about 8 inches high, about 2 inches round and contains about 8 fluidounces.   The bottles are closed with metal caps fitted over the mouth of the bottle.   The said substance is light-wine colored, and the bottle and contents are transparent.   When served the cap is removed from the bottle, and [the bottle is] handed to the customer, and the contents usually drunk from the bottle.   On the occasion.in question the coca-cola served the plaintiff was in an inclosed trans-

parent glass bottle, and the contents of the usual kind. Said product is put up and sold in very large quantities in glass bottles, and the manufacturers and dealers, including the defendants, know at all times that there is danger of broken pieces of glass getting into and being in the bottles. Before the cap is removed from the bottle, the bottle may be readily turned up and any foreign substances therein, such as glass or other like substances, readily detected. After the cap is removed this can not be done conveniently without spilling the contents. Although of necessity knowing of the danger of glass in particular getting into and being in said bottles, and although the slightest inspection of said bottle by merely inverting same before uncapping would have disclosed said particles of glass in said bottle of coca-cola, said defendant dealer, his said agents and employees, negligently and carelessly opened said bottle and served same to plaintiff to be drunk by plaintiff as a wholesome and refreshing beverage fit for human consumption, without making said inspection or any other inspection of same, and without making any effort to see, as may readily have been done, that said bottled beverage contained particles of glass, was unwholesome, and unfit for human consumption. After said bottle was uncapped by said dealer, his said servants and agents, and served to plaintiff to drink, it was not practicable for the plaintiff to then turn same up and inspect same before drinking, inverting the bottle being the most dependable and certain method of detecting glass or like substances in said bottle; said product being one where there was danger of glass being in the bottle, and same being so put up and bottled as to make same readily discoverable by the dispenser by so inspecting the bottle before opening, and not so discoverable by the consumer by the use of ordinary care after being opened and served to him, all of which was well known to said dealer, his agents and employees, who in the exercise of ordinary care and diligence were in duty bound to make said inspection, and which would have disclosed said particles of glass in said drink, and a failure to do which, along with the negligence of said manufacturer, was the direct and proximate cause of petitioner's said injury and damage."

The question for the determination of this court is whether a cause of action is set out in the plaintiff's petition against the retail dealer. The suit was brought against joint tort-feasors, the

retail dealer, a resident of the county where the suit was brought, and the manufacturer, a resident of a different county. If the petition fails to set forth a cause of action against the local retailer and was properly dismissed as to him, then the demurrer of the manufacturer, raising the question of jurisdiction over it, should have necessarily been sustained. "It is a general rule supported by the decided weight of authority, that, upon the retail sale of articles of food by a dealer directly to the consumer for domestic use and for immediate consumption, the law implies a warranty that such articles are sound and wholesome. Such is the rule of the common law, and it is strengthened rather than impaired by modern decisions. The same rule prevails under the civil law." Flessher v. Carstens Packing Co., 93 Wash. 48 (160 Pac. 16). The early rules of law were formulated upon the theory that the dealers, having an opportunity to observe and inspect the appearance and quality of food products they offered to the public, were accordingly charged with knowledge of their imperfections. No knowledge of the original or present contents of a perfectly appearing can is possible in the practical use of canned products. They can not be chemically analyzed every time they are used. Accordingly, the reason for the rule having ceased, a new rule should be applied to the use and sale of goods in perfectly appearing sealed cans and unbroken packages that will more nearly harmonize with what is rational and just. Bigelow v. Maine Central Ry. Co., 110 Me. 105 (85 Atl. 396, 43 L. R. A. (N. S.) 627); 11 R. C. L. 1124, § 29; Fleetwood v. Swift & Co., 27 Ga. App. 502 (108 S. E. 909). But this new rule, or exception to the old rule, is predicated on the theory that there was apparently no defect in the can or any other visible imperfection in the food. If, from the appearance of the can or otherwise, there are indications that its contents are unwholesome, and these indications are sufficient to put the retailer on such notice as, in the exercise of reasonable care, would be equivalent, in effect, to imputed knowledge, it is his duty to ascertain the truth respecting the food. Bigelow v. Maine Central Ry. Co., supra. The rule with reference to sealed canned goods, which is that the dealer does not impliedly represent and guarantee that the food is wholesome and fit for consumption, is brought about by the fact that the law will not imply a warranty of that of which it is impossible for the dealer to know

by the exercise of any skill, knowledge, or investigation, however great (Bigelow v. Maine Central Ry. Co., supra), without breaking the package. Therefore, so long as the package remains unbroken it is impossible to see any defect in the food; for it would be concealed by the can, and there is no way for the retailer, consistently with the practical use of the product, to test its quality.

But in the instant case, by looking through the transparent coca-cola bottle the dealer could have seen the particles of glass in the coca-cola; and therefore the reason for the rule, that there was no possible way for the retailer, consistently with the practical use of the product, to know that the glass was in the coca-cola, did not exist; and we think that it was a question for the jury to decide whether the defendant was negligent in failing to see the glass in the coca-cola. "In the ordinary sale of goods the rule of caveat emptor applies, unless the purchaser exacts of the vendor a warranty. Where, however, articles of food are purchased from a retail dealer for immediate consumption, the consequences resulting from the purchase of an unsound article of food may be so serious and prove so disastrous to the health and life of the consumer that public safety demands that there should be an implied warranty on the part of the vendor that the article sold is sound and fit for the use for which it was purchased." Wiedman v. Keller, 171 Ill. 93 (49 N. E. 210); Clement v. Rommeck, 149 Mich. 595 (113 N. W. 286, 13 L. R. A. (N. S.) 382, 119 Am. St. R. 695). "The implied warranty of the wholesomeness of food placed on sale, whenever it exists at all, arises as an implication of the common law. The liability does not rest so much upon an implied contract as upon a violation or neglect of a duty voluntarily assumed." Flessher v. Carstens Packing Co., supra; Bishop v. Weber, 139 Mass. 411 (1 N. E. 154, 52 Am. R. 715); Tomlinson v. Armour & Co., 75 N. J. Law, 748 (70 Atl. 314, 19 L. R. A. (N. S.) 923). The negligence consists in offering for sale food not known to be wholesome, to the purchaser's injury. It is the duty of the retailer to know that the food is not unwholesome. The negligence consists in the violation of the duty to know, under such circumstances, what he should or ought to have known, and to refrain from causing the injury. Flessher v. Carstens Packing Co., supra. Whether the action be one on warranty or negligence, it comes to the same thing. It sounds in tort. *McPherson* v.

*Capuano,* 31 *Ga. App.* 82 (121 S. E. 580). This court, in its opinion in *Maddox Coffee Co.* v. *Collins,* 46 *Ga. App.* 220, 223 (167 S. E. 306), has stated as follows: "If the foreign substance should have been discovered in the exercise of ordinary care by the retailer, but was not so discovered, then both the manufacturer who put the dangerous article upon the market and the retailer who sold it [the article being coffee with small particles of glass therein, it not being sold by the retailer in the original package] to the plaintiff would be liable for the consequent injuries." In *Fleetwood* v. *Swift & Co.,* supra, it was stated: "A retailer, or one acting as the mere distributor to the retail trade, of a food product contained in [perfect appearing] unbroken packages as put up by and procured from a reputable dealer, distributor, or manufacturer, is not prima facie liable in damages to a consumer for injuries occasioned by a deleterious condition of the product, since he could not in the exercise of ordinary diligence be expected to open for inspection the individual packages thus prepared by another." In the opinion 11 R. C. L. 1124, § 29, with reference to a retailer's liability for canned or sealed packages, is quoted in full, and that section deals with "a perfect appearing can or sealed package."

We do not think we should rule to the effect that retail dealers, as a matter of law, are not liable for imperfections in provisions sold in sealed packages, put up by and procured from a reputable manufacturer, regardless of whether or not such imperfection could have been discovered by the use of reasonable care on the part of the dealer. The true and reasonable rule, and the one which seems to have been followed by the courts of this State, is to the effect that retail dealers may be liable for selling provisions containing injurious substances, whether the same be sold in bulk or in the original unbroken package put up by and procured from a reputable manufacturer, where the dealer fails to exercise reasonable care in selling them. *McPherson* v. *Capuano,* supra. If the goods sold are in the original package sealed and unbroken, and it is a *perfect appearing package,* and it is impossible, in the practical use of the package in the retail trade, to discover the hidden unwholesomeness or imperfection without breaking the package, and the dealer has no positive knowledge, or notice amounting to imputed knowledge, of the hidden imperfection,

ordinary care does not require the dealer to open the same, and as a matter of law he would not be negligent under these circumstances. *Howard* v. *Jacobs' Pharmacy Co., 55 Ga. App.* 163 (189 S. E. 373). However, there are circumstances where the dealer could be said to be negligent for a failure to detect patent imperfections that are capable of being detected without opening the unbroken package. To illustrate: If the package from its appearance is defective, as where fruit in a can is supposed to be hermetically sealed and where it is obvious that there is a hole in the can, which, under the circumstances, would indicate that the food therein was imperfect and unfit for human consumption, and the dealer in the exercise of due care should have discovered the hole, we think it is incumbent upon him to use reasonable care in investigating the apparent unwholesomeness of the contents of the can; or if the smell of a package containing food should be of such a character as to indicate that the contents were decaying, the dealer should make further investigation before selling the same. In other words, the appearance of an unbroken package may be of such a character as to require the dealer, in the exercise of reasonable care, to make an investigation and ascertain whether or not the food is unwholesome. Therefore, in the instant case, where the glass, the deleterious substance, in the coca-cola was visible through the transparent glass bottle and through the transparent contents (the coca-cola), it was not impossible for the dealer to know that the glass was in the coca-cola; and the jury will be authorized to say that this case did not come under the exception to the general rule as stated in the *Fleetwood* and *Howard* cases, supra, but that it came under the general rule itself, and that in the exercise of reasonable care the dealer ought to have known that the glass was in the coca-cola by merely looking at and through the package and its contents without breaking the seal or changing its character as to sale value or otherwise as a sealed package, and that his failure to know what he thus ought to have known was a violation of his duty and was negligence.

The dealer is not an insurer. It is not necessarily his duty to inspect each bottle of coca-cola that he sells. The law does not require him to break and inspect every sealed package which he buys from a manufacturer. This would be impractical in the conduct of his business. But the law does say to a dealer in food for

immediate consumption: "If by the exercise of reasonable care you could have known, then you ought to have known that the food, or coca-cola, was unwholesome; and you are 'liable only where there was a failure to exercise reasonable care in respect to its quality and preparation' (*Rowe* v. *L. & N. R. Co.,* 29 *Ga. App.* 151, 113 S. E. 823), for you have violated your duty to know of the unwholesomeness of the food and that is negligence." See *McPherson* v. *Capuano,* supra; Code, § 105-1101. This is a case of sale by the dealer of food (coca-cola) for immediate consumption, and should not be likened to cases of sale of commodities like hardware. See, in this connection, *King Hardware Co.* v. *Ennis,* 39 *Ga. App.* 355, 360 (147 S. E. 119) ; Clement *v.* Rommeck, supra. The duty in this case on the part of the dealer in food (coca-cola) sold for immediate consumption is different from the duty of the buyer. It is the duty of the dealer to know, or he ought, in the exercise of reasonable care, to have known of the unwholesomeness; whereas the duty of the buyer arises only after knowledge, and there is no duty to know. See *Fulton Ice & Coal Co.* v. *Pece,* 29 *Ga. App.* 507, 519 (116 S. E. 57). "Even if it be conceded that under the allegations of the petition both the plaintiff and the defendant were negligent in failing to exercise the duty which the law imposed upon them respectively, the court could not say as a matter of law that the plaintiff's injuries were due solely to his failure to exercise ordinary care rather than to the defendant's negligence." *Collins* v. *Augusta-Aiken Railway & Electric Cor.,* supra. In short, if the dealer knew the glass was in the coca-cola (had positive knowledge), or by proper care on his part could have known its condition (imputable knowledge), he is liable. These are questions for the jury and not for the court. The question is also for the jury to determine whether the plaintiff exercised due (ordinary) care on his part in drinking the coca-cola with the glass therein. *Cordell* v. *Macon Coca-Cola Bottling Co.,* 56 *Ga. App.* 117, 120 (192 S. E. 228) ; Craft *v.* Parker, supra. If the plaintiff did not exercise such care, he can not recover even though the defendant's negligence caused the injury. Code, § 105-603. It seems to the writer of this opinion that the ruling in *Cordell* v. *Macon Coca-Cola Bottling Co.,* supra, goes further in holding a dealer liable for deleterious material in coca-cola, which causes injury, than does the instant decision.

The court erred in sustaining the general demurrer both as to the local dealer and as to the non-resident manufacturer.

*Judgment reversed. Guerry, J., concurs. Broyles, C. J. dissents.*

### ON MOTION FOR REHEARING.

MacIntyre, J. This case is not based primarily on the duty of the dealer of coca-cola to inspect, but is based primarily upon the duty of the dealer to know (even though that knowledge be imputable knowledge only) that the food is not unwholesome; and where, in addition to the facts alleged in the petition and set forth in the opinion above, it was also alleged that "in drinking the first of the coca-cola plaintiff did not detect any defects or that there was anything in said coca-cola until after having drunk half or more of said bottle of coca-cola he detected fine, hard particles therein, and upon examination found small pieces of glass therein; that he swallowed at least two if not more of said hard matters or particles, the exact number of which he can not give; that the particles upon examination of the remaining undrunk coca-cola in your petitioner's mouth upon investigation he discovered that they were glass, that he found in said bottle of coca-cola a piece of curved glass about one inch long and about five-sixteenths of an inch wide, and another piece of glass just a little shorter in length and a little smaller in width," we think it may be reasonably inferred from these pleaded facts and the other alleged facts that the glass in the coca-cola was in such size and character as to amount to a defect which a reasonably prudent dealer should have discovered before delivering it to the customer. From all the facts pleaded, we think a conclusion is fairly deducible that the defect was reasonably observable. See *King Hardware Co.* v. *Ennis,* supra. This case sounds in tort, and the negligence as pleaded consists in the violation of the duty to know, under the circumstances, what the dealer should or ought to have known, and to refrain from causing injury.