A98A0002. THOMASSON v. RICH PRODUCTS CORPORATION.
(502 SE2d 289)

McMURRAY, Presiding Judge.

Plaintiff Linda Thomasson brought this tort action against defendant Rich Products Corporation ("Rich Products"), alleging she purchased "a bagel from Infantry Hall cafeteria at Ft. Benning, Georgia[; that when plaintiff] began to eat the [bagel, she discovered] there was a piece of metal [therein; that this] metal in the bagel resulted in fractures to [plaintiff's] teeth and TMJ requiring dental assistance[; and that defendant Rich Products] allowed foreign materials to be sold as a bagel thereby causing [permanent] damage to the plaintiff's mouth."

Plaintiff's Exhibit 1 consists of an oblong "piece of metal and some bagel dough," approximately one inch long and a half-inch wide, with what appears to be a staple or other sharp prong-like portion protruding. At trial, plaintiff explained that when she "bit down on it [the bagel, she] felt something that to [her], it felt like a hard crust. And [she] bit down in it again and . . . said, well, this doesn't feel right, and [she] had a sharp pain in [the] left side on the jaw, [her] mouth, and that's when [she] spit it out. . . . To [plaintiff] it looked like, the first thing that [came] to . . . mind, [plaintiff] thought it was a staple. . . ."

Nathan Carter, a cook at the Infantry Hall cafeteria, sold plaintiff the bagel in question. Nathan Carter explained the bagels "come from Kraft out of Atlanta . . . in pasteboard cases, [containing sealed] boxes." The sealed boxes of bagels are stored in a freezer until

needed. When Nathan Carter got bagels that morning, the "box was sealed." Ronnie Schifano, a food activity manager at Ft. Benning confirmed that, at the time of plaintiff's mishap, the Infantry Hall cafeteria was selling Rich Products' bagels, in that the cafeteria was not selling anyone else's bagels. He further confirmed the bagels arrive in a sealed box because "[w]e don't accept anything that's broken." But he agreed he had no personal knowledge of what entity actually produced the bagels and confirmed the cafeteria never got anything directly from Rich Products; items came through Kraft.

According to Christopher Loucks, defendant's Manager of Inventory Planning, defendant does not manufacture bagels; rather, they were manufactured by Sir Bagel Company, which ships the bagels in sealed containers to defendant's warehouse in West Seneca, New York. At no time does Rich Products open the boxes of bagels, or repackage the bagels, alter the boxes, or ship bagels directly to Ft. Benning. Rich Products does not participate in any way with how Sir Bagel manufactures bagels. Loucks confirmed that defendant puts the bagels "in a box that has Rich Products on it[, and they are] sold as a Rich Products Company product. . . ." But on cross-examination, Loucks further confirmed that "if you have a bagel that has no . . . marks [yet] you find metal in it, that metal had to have got in there in the manufacturing process where it was baked. . . ."

At the close of all the evidence, defendant moved for a directed verdict, arguing the undisputed evidence showed that Rich Products did not manufacture the bagels, but Sir Bagel did, and that Rich Products received the bagels in prepackaged sealed containers. Consequently, Rich Products had no knowledge or notice of a hidden latent defect in any particular bagel, much less the one plaintiff ate. The trial court concluded "Rich Products Corporation was not liable for Plaintiff's injuries and damages because [it was] not the manufacturer," and dismissed plaintiff's case. This appeal followed. *Held*:

1. Plaintiff disavows any recovery under OCGA § 51-1-11 (product liability in the absence of privity). Rather, she stakes her claim under OCGA § 51-1-23 (sale of unwholesome foods), which provides: "Any person who knowingly or negligently sells unwholesome provisions of any kind to another person, the defect being unknown to the purchaser, by the use of which damage results to the purchaser or to his family, shall be liable in damages for such injury." Plaintiff contends the direction of the verdict was erroneous because the "sealed carton doctrine does not apply to Rich Products Corporation because Rich Products Corporation was responsible for the goods that it had manufactured and placed in its box. [Specifically,] Rich Products had the bagels made according to its recipe and design, and had them placed in its container and sealed with its name on the box as their product." Consequently, plaintiff contends Rich Products ought to

have known of the presence of a staple in one of its bagels.

"In the context of food products, 'if the goods sold are in the original package sealed and unbroken, and it is a perfect appearing package, and it is impossible, in the practical use of the package in the retail trade, to discover the hidden unwholesomeness or imperfection without breaking the package, and the dealer has no positive knowledge, or notice amounting to imputed knowledge, of the hidden imperfection, ordinary care does not require the dealer to open the same, and as a matter of law he would not be negligent under these circumstances.' (Citation and punctuation omitted.) *Brock v. Simpson*, 103 Ga. App. 800, 801 (120 SE2d 885) (1961); see also *Davis v. Williams*, 58 Ga. App. 274 (2) (198 SE 357) (1938)." *Sirmons v. Derst Baking Co.*, 221 Ga. App. 127, 128 (470 SE2d 515).

In the case sub judice, the bagel was not packaged or wrapped when sold at retail, but there is no evidence that the staple was noticeable upon inspection. Rather, by all outward appearances, it was a perfect bagel. It would be impossible, in the practical retail trade, to break open every baked product looking for an unsuspected or hypothetical flaw. Defendant Rich Products had no positive knowledge or notice of the imperfection here observed, since the staple had already escaped discovery by metal detectors at the Sir Bagel baking facilities. In our view, defendant Rich Products as distributor " 'is not prima facie liable in damages to a consumer for injuries occasioned by [the] deleterious condition of the [bagel with a staple baked into it], since [Rich Products] could not in the exercise of ordinary diligence be expected to open for inspection the individual [baked goods] thus prepared by another." *Davis v. Williams*, 58 Ga. App. 274 (2), supra.

2. Nevertheless, relying on *Nelson v. C. M. City, Inc.*, 218 Ga. App. 850, 852 (2) (463 SE2d 902), rev'd in part on other grounds, 267 Ga. 390 (478 SE2d 769), plaintiff argues that Rich Products is an ostensible manufacturer and therefore strictly liable under OCGA § 51-1-11.1, because it had "input" into the manufacturing process or design specifications. We disagree.

First, under OCGA § 51-1-11.1 (a), "the term 'product seller' means a person who, in the course of a business conducted for the purpose leases or sells and distributes; installs; prepares; blends; packages; labels; markets; or assembles pursuant to a manufacturer's plan, intention, design, specifications, or formulation; or repairs, maintains; or otherwise is involved in placing a product in the stream of commerce. This definition does not include a manufacturer which, because of certain activities, may additionally be included within all or a portion of the definition of a product seller." Here, there is no evidence that the recipe or formula for these bagels was based on Rich Products' own specifications, as opposed to those

of the actual producer or manufacturer, Sir Bagel.

Second, OCGA § 51-1-11.1 (b) expressly provides that, "[f]or purposes of a product liability action based in whole or in part on the doctrine of strict liability in tort, a product seller is not a manufacturer as provided in Code Section 51-1-11 and is not liable as such." "[T]his includes a seller who merely labels a product as its own prior to sale. *Alltrade, [Inc. v. McDonald*, 213 Ga. App. 758, 759 (445 SE2d 856)]; *Ream Tool Co. v. Newton*, 209 Ga. App. 226, 227 (3a) (433 SE2d 67) (1993)." *Buford v. Toys R' Us*, 217 Ga. App. 565, 566 (1) (458 SE2d 373). Thus, after the enactment of Ga. L. 1987, p. 1152, § 1 (OCGA § 51-1-11.1), a so-called ostensible manufacturer, which merely affixes its label to a product and sells it under its own name, no longer is subject to strict liability in tort as is an actual manufacturer. *Alltrade, Inc. v. McDonald*, 213 Ga. App. 758, 760, supra. The trial court correctly directed the verdict in favor of defendant seller, Rich Products.

*Judgment affirmed. Eldridge, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED MAY 4, 1998.

*L. B. Kent*, for appellant.
*Jones, Cork & Miller, Wendell K. Howell*, for appellee.