A04A2020, A04A2251. BOYCE et al. v. GREGORY POOLE EQUIPMENT COMPANY et al. (two cases).

(605 SE2d 384)

ELDRIDGE, Judge.

The Gregory Poole Equipment Company sold a forklift operated by a standup operator to Ecolab to experiment with, because Ecolab had previously only used conventional forklifts. Robyn Embry, Ecolab's employee, was using the standup forklift, while other employees were using regular forklifts in the same close work area in the Ecolab plant. When a parked forklift's forks entered the operator's compartment of the standup unit, the forks speared Embry's leg, severing an artery and causing him to bleed to death. The trial court erroneously granted motions for summary judgment against the product liability/wrongful death and personal injury actions. We affirm in part and reverse in part.

The contentions of the plaintiff and defendant sharply conflict; each point to conflicting direct and circumstantial evidence. Both want conflicting inferences drawn as the only reasonable inference. Weight and credibility of the evidence are to be drawn by the jury who resolve conflicts in evidence. The favorable inferences which must be drawn for the respondent and conflicts in the evidence as to material issues of fact as to issues of the deceased's negligence or the negligence of Gregory Poole Equipment require a reversal of summary judgment on such issues. As to strict product liability, the evidence is not in dispute and the law is clear; summary judgment as to strict product liability must be affirmed.

On January 2, 1998, in operating the standup forklift without a rear guard-door, Embry's forklift had contact with a parked forklift, which had its forks raised, causing the forks to enter the operator's compartment; no one saw the accident so that circumstantial evidence must be utilized to determine how it occurred. Such evidence may raise jury issues as to Embry's assumption of the risk, comparative negligence, and contributory negligence, but the evidence does not demand judgment as a matter of law. *Vaughn v. Pleasent*, 266 Ga. 862, 864 (1) (471 SE2d 866) (1996) (assumption of risk requires actual knowledge and subjective appreciation of the risk).

Material Handling Associates ("MHA") designed and manufactured the forklift in a joint venture with Caterpillar, and Gregory Poole Equipment, a Caterpillar dealer, sold this standup forklift

without the rear guard-door in 1994 to Ecolab, along with three others. The sole purpose of the optional rear metal-plate guard-door is to prevent objects from entering the operator's compartment, injuring the operator who stands exposed at the rear of the forklift. Expert testimony was that if there had been such guard-door, Embry would not have been killed.

Hal Ingram, General Manager of Gregory Poole Equipment, served on the advisory board of the MHA design team for this standup forklift. The design board made suggestions for the design of the forklift and some were used in the design. In exchange for Ingram serving on the advisory board for the design team, Gregory Poole Equipment got to sell the forklift.

In 1994, Gregory Poole Equipment sales representatives held itself out as having expertise in the MHA standup forklift, but they were ignorant of the purpose of the rear guard-door and had never received any training regarding use of the rear guard-door. They did not discuss with Ecolab the rear guard-door option or the risks of operating without one prior to sale and delivery. Ecolab relied upon Gregory Poole Equipment's recommendations, because prior to the 1994 purchase, Ecolab had no prior experience with standup forklifts. The defendant denied that no information regarding the rear guard-door was given, but it only gave the information in 1996 after the sale and the first injury. Gregory Poole Equipment employees made 15 to 20 visits to Ecolab to determine the plant's configuration, use, and options needed and made demonstrations with standup forklifts without the rear guard-door. Relying upon the advice given, Ecolab purchased four forklifts with the two optional safety devices recommended.

In the winter of 1995, Material Handling Solutions, a trade publication, and Caterpillar featured the rear guard-door as a desirable safety device for industrial use. Caterpillar and many of its dealers recommended the rear guard-door for safety on the standup forklifts.

In 1996, another Ecolab employee was injured using one of the standup forklifts without a rear guard-door when he backed into an open base. In 1996, after this injury, Ecolab was concerned that an employee using a standup forklift could back into a metal rack, causing the rack to come into the compartment; Ecolab wanted to see if there were safety devices to prevent this. Ecolab wanted to try to use the standup forklift along with its other regular forklifts, if it could be done safely. Thus, in 1996, Ecolab recontacted Gregory Poole Equipment to learn of possible options to prevent further compartment-intrusion type injuries, while using a standup forklift. In 1996, Gregory Poole Equipment provided Ecolab employees with written materials about the rear guard-door that gave a negative impression

as to its use and safety; between the materials and Gregory Poole Equipment's employees, Ecolab was persuaded not to retrofit the standup forklifts with the rear guard-doors. Such materials stated "not recommended for units operating on loading docks," which Ecolab's forklifts did.

Thus, in 1996, Gregory Poole Equipment was faced with an employee of Ecolab, who had been injured by the absence of a rear guard-door in that year; in 1994, it had not advised as to the availability of the guard-door; and in that year it was asked to advise as to safety options to guard against such further risk of injury. This presented the defendant with a conflict of interest, whether to candidly advise as to rear guard-doors, risking suit for failure to warn as to the injury, or to chill the interest of Ecolab in such safety items, which would create a defense of lack of reliance in not using the rear guard-door. Thus, a jury issue as to weight and credibility arises as well as to the late warning's adequacy.

Plaintiff's expert witness testified that, except in very rare occasions, all standup forklifts should be equipped with rear guard-doors to protect the operator from injury. In plants like Ecolab where a racking system was in use, it was universally recognized that standup forklifts should be equipped with rear guard-doors for safety purposes. He stated that Embry's standup forklift was defective and dangerous without a rear guard-door. He further testified that under industry standards this Ecolab was a situation calling for a rear guard-door and that Gregory Poole Equipment should have advised Ecolab of this.

After the sale to Ecolab in 1994 and in 1996 after a prior accident and prior to Embry's death, a document was sent to Ecolab stating that rear guard-doors were dangerous and should not be used. Such information was contrary to what Caterpillar and its other dealers were advising regarding rear guard-doors. Such document may have caused Ecolab not to retrofit the MHA standup forklift with the rear guard-door prior to Embry's death and after the purchase. Such information was false. Those in the higher decision making positions at Ecolab neither were aware nor discussed such materials until after Embry's death, although lower officials were aware of such materials. Although the false information was in the possession of Ecolab, there was a question of fact as to whether anyone had read the material or if such person reading the false material was in a position to influence whether or not the standup forklift should be retrofitted with a rear guard-door.

Gregory Poole Equipment offered evidence that Ecolab, had it known of the rear guard-doors, would not have purchased the standup forklift equipped with them, because after the 1996 accident and learning of the rear guard-door option, Ecolab did not retrofit the

forklifts with the guards, and in 1998, after Embry's death, Ecolab did not retrofit with the rear guard-doors. In 1994, at the time of purchase, Ecolab was not made aware of the rear guard-door option available. Thus, a jury question arises as to whether in 1996, Gregory Poole Equipment adequately warned Ecolab of the rear guard-door or whether it chilled Ecolab's desire to retrofit with rear guard-doors so there would be no reliance.

### Case No. A04A2020

1. The plaintiff contends that the trial court erred in granting summary judgment to Gregory Poole Equipment. We agree in part and disagree in part.

(a) Gregory Poole Equipment, as a product seller of a product manufactured by another, MHA, is not liable in strict product liability by statute. OCGA § 51-1-11.1; *Farmex, Inc. v. Wainwright*, 269 Ga. 548, 549-550 (501 SE2d 802) (1998); *Robinson v. Williamson*, 245 Ga. App. 17, 19 (1) (537 SE2d 159) (2000); *Thomasson v. Rich Products Corp.*, 232 Ga. App. 424, 426 (2) (502 SE2d 289) (1998); *Ream Tool Co. v. Newton*, 209 Ga. App. 226, 227-228 (3) (433 SE2d 67) (1993). Thus, the grant of summary judgment under strict product liability was appropriate as to this theory of liability.

(b) Gregory Poole Equipment does not become the manufacturer because its employee served on the advisory board for the design team of the manufacturer and may have had input into the ultimate design of the product. OCGA § 51-1-11.1 (a); *Thomasson v. Rich Products Corp.*, supra at 426. Strict product liability applies only to the product manufacturer or designer. *Ellis v. Rich's, Inc.*, 233 Ga. 573, 577-578 (212 SE2d 373) (1975). Since OCGA § 51-1-11 (b) is in derogation of common law, then it must be strictly construed to apply to actual manufacturers or designers only. *Robert F. Bullock, Inc. v. Thorpe*, 256 Ga. 744, 745 (353 SE2d 340) (1987); *Daniel v. American Optical Corp.*, 251 Ga. 166, 167 (1) (304 SE2d 383) (1983); *Ford Motor Co. v. Carter*, 239 Ga. 657, 658 (238 SE2d 361) (1977). Thus, the grant of summary judgment on strict product liability for defective design was appropriate.

(c) On theories of negligence, the trial court erred in granting summary judgment, because there exist material issues of fact to be decided by a jury. There exist material issues of fact as to Gregory Poole Equipment's failure to advise in 1994 of the availability of a rear guard-door as a safety device and failure to warn of the inherent danger of the use of a standup forklift without a rear guard-door in close proximity with the use of other regular forklifts after it made a detailed investigation into such use in the Ecolab plant.

(1) Generally, there is no duty on the seller to warn the user or consumer of a patent defect or danger that the purchaser should recognize. See *Ream Tool Co. v. Newton,* supra at 228-229 (4). "An open and obvious danger no longer alone bars design defect claims in Georgia, but may bar 'failure to warn' claims." *Daniels v. Bucyrus-Erie Corp.*, 237 Ga. App. 828, 829 (516 SE2d 848) (1999); see also *Ogletree v. Navistar Intl. Transp. Corp.*, 269 Ga. 443, 446 (500 SE2d 570) (1998). If the standup forklift is used alone, then the absence of a rear guard-door poses no obvious risk or danger to the operator, because the danger comes only when such forklift is used in close proximity with other forklifts, which forks could enter the operator's compartment from the sides or rear; therefore, there exists a factual jury issue as to whether or not such absence of a rear guard-door constitutes a patent or a latent defect. Id. If the absence of any rear guard-door may be patent, the danger thus created is not readily obvious, except when the use has been studied as Gregory Poole Equipment did, and this may make the product unreasonably unsafe for such ordinary use; the availability of the rear guard-door as an option and the risk in actual use in close proximity with other regular forklifts creates a material issue of fact as to whether such were latent or patent defects and whether the product as designed was "reasonably safe" for use without the rear guard-door, which the seller should have known and warned of after assuming to investigate and to observe Ecolab's plant operations. See *Ream Tool Co. v. Newton,* supra at 228 (negligence case duty of manufacturer to warn); *Hunt v. Harley-Davidson Motor Co.*, 147 Ga. App. 44, 46 (3) (248 SE2d 15) (1978) (strict liability case duty of manufacturer to warn); *Poppell v. Waters*, 126 Ga. App. 385, 387-388 (1) (190 SE2d 815) (1972) (strict liability and negligence case duty of manufacturer and seller to warn); *Stovall & Co. v. Tate*, 124 Ga. App. 605, 610-612 (1) (184 SE2d 834) (1971) (negligent case duty of manufacturer and seller to warn). There is a factual question as to whether the user or owner, Ecolab, was aware that in the normal function of the standup forklift a danger or peril was created. *Hunt v. Harley-Davidson Motor Co.*, supra at 46. "A product is not rendered 'defective' by the patent absence of a specific safety device which would serve to guard against a common danger connected with the *limited use of a product*, which danger the ultimate user can himself recognize and otherwise guard against." (Emphasis supplied.) *Fortner v. W. C. Cayne & Co.*, 184 Ga. App. 187, 191 (2) (360 SE2d 920) (1987). Conversely, if "a common danger connected with the [general] use of a product" exists, then the product may be defectively designed or there may arise a duty to warn. See generally *Ogletree v. Navistar Intl. Transp. Corp.*, supra at 444-446; *Banks v. ICI Americas, Inc.*, 264 Ga. 732 (450 SE2d 671) (1994) (defective design case which involves warning).

(2) In 1994 and 1996, when Gregory Poole Equipment made investigations into the product's expected use, the seller should have recognized danger in such use and known that the purchaser and third parties would rely upon such determination; such seller is under an additional duty over the general duty regarding warning because it has assumed a duty to exercise ordinary care in making its investigation and recommendation; where there is such reliance, the reliance may cause the purchaser and third party to ignore a patent defect in the product.

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if (a) his failure to exercise reasonable care increases the risk of harm, or (b) he has undertaken to perform a duty owed by the other to the third person, or (c) the harm is suffered because of reliance of the other or the third person upon the undertaking. Did the retailer have a duty to advise potential users of necessary safety precautions and possible danger in the use or misuse of this product? A manufacturer and retailer of a product which, to their actual or constructive knowledge, involves danger to users have a duty to give warning of such danger to the purchaser at the time of sale and delivery. The sufficiency of that warning is for the jury. We cannot say as a matter of law that the distributor was not negligent in separating the [product] from the safety instructions and instructing the plaintiff in a manner contrary to the missing safety instructions.

(Citations and punctuation omitted.) *Beam v. Omark Indus.*, 143 Ga. App. 142, 144-145 (1) (b) (237 SE2d 607) (1977); accord *Huggins v. Aetna Cas. & Surety Co.*, 245 Ga. 248, 249 (264 SE2d 191) (1980); *Bishop v. Farhat*, 227 Ga. App. 201, 206 (6) (489 SE2d 323) (1997). "The principle stated in *Beam* and *Bishop* must be confined to those situations in which evidence shows a distributor or seller is aware of a danger either not communicated by the manufacturer's warning or substantively different from the dangers the manufacturer has included in a warning label." *Farmer v. Brannan Auto Parts*, 231 Ga. App. 353, 355 (1) (498 SE2d 583) (1998).

Under the facts of this case, *Farmer v. Brannan Auto Parts* does not apply, because there were no warnings received by Ecolab from MHA. In this case, there were no warning labels or warnings given by the manufacturer as to the danger of other forklifts or objects

entering the operator's compartment, because there exists a jury issue that Gregory Poole Equipment, as the exclusive dealer, was supposed to give all warnings and instructions as to use for the manufacturer. This is why the distributor had to mark the order form that all options for safety equipment had been discussed with the purchaser before the manufacturer would deliver the standup forklift to the purchaser. Further, the distributor had made an extensive investigation of Ecolab's operations and had advised Ecolab on what equipment and safety devices to use. Thus, the distributor had assumed a duty to do so in the exercise of ordinary care. If there was reliance by Ecolab upon the advice and recommendations of Gregory Poole Equipment, then such assumed duty by Gregory Poole Equipment may negate the open and obvious danger defense, because there was reliance upon the superior knowledge and expertise of the seller by the purchaser. *Beam v. Omark Indus.*, supra at 144-145. The disputed facts of this case create jury issues as to the exercise of ordinary care in this regard as well as to reliance.

In 1996 after the sale, upon learning of the injury to Ecolab's first injured employee and after Ecolab's request for information about how to prevent such injuries in the future, Gregory Poole Equipment had a duty to warn and to warn adequately and fairly of its acquired knowledge of a risk. See *Chrysler Corp. v. Batten*, 264 Ga. 723, 724 (1) (450 SE2d 208) (1994); *Mack Trucks v. Conkle*, 263 Ga. 539, 540 (1) (436 SE2d 635) (1993); *Beam v. Omark Indus.*, supra at 144-145. Thus, a jury question arises as to whether in 1996, Gregory Poole Equipment fairly and adequately warned Ecolab of the risk of not using a rear guard-door or whether it chilled Ecolab from using the rear guard-door.

(3) Generally, when the seller knows, or should know, the particular use of the product and risks from such use, it has a duty to warn; therefore, there exists a jury question whether or not in 1994, Gregory Poole Equipment had a duty to advise of the existence of the rear guard-door, the risk of use of the standup forklift in the Ecolab plant, and the proper safe use of the standup forklift under such conditions, because it had made an extensive investigation and it was expected that Ecolab would rely upon and did rely upon such recommendation. Under strict product liability, there exists a duty to warn "[w]here [the manufacturer or seller] has reason to anticipate that danger may result from a particular use [it] may be required to give adequate warning of the danger and a product sold without such warning is in a defective condition." (Citation and punctuation omitted.) *Center Chem. Co. v. Parzini*, 234 Ga. 868, 870 (3) (218 SE2d 580) (1975) (strict liability case manufacturer); see also *Pepper v. Selig Chem. Indus.*, 161 Ga. App. 548, 550 (3) (288 SE2d 693) (1982) (strict liability and negligence case seller); *Talley v. City Tank Corp.*, 158 Ga.

App. 130, 137 (3) (279 SE2d 264) (1981) (same). While strict product liability and negligence are generally fundamentally different theories of liability, in the area of product design and of warnings there exists an area of overlap so that the case law may be applied from either area, because adequate warnings as to the proper or safe use of a product are part of the total design package of the product. See *Ogletree v. Navistar Intl. Transp. Corp.*, supra at 445-446; *Banks v. ICI Americas, Inc.*, supra at 735, n. 3; see also *Chrysler Corp. v. Batten*, supra at 725 (1) (the seller is required to warn if he "has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge of the danger") (citation and punctuation omitted); *Daniels v. Bucyrus-Erie Corp.*, supra at 828.

(4) Whether or not in 1994 or 1996, Ecolab would have chosen the rear guard-door had it been adequately, fairly, timely, and properly warned, creates a jury question of conflicting fact and opinion. Various officers and agents of Ecolab stated their opinions that they would not have purchased the rear guard-door. As opinions, the weight and credibility of such rests with a jury. The fact that Ecolab upon learning of the rear guard-doors prior to and after Embry's death chose not to retrofit the standup forklifts with such safety devices, was also an evidentiary issue for a jury to decide, because the conflict of interest in 1996 that Gregory Poole Equipment had must be considered by the jury in determining weight and credibility of the Ecolab employees whose opinions may have been chilled by what they were told.

### Case No. A04A2251

2. There exists a jury question whether or not Gregory Poole Equipment in 1994, committed misrepresentations or acted with reckless disregard of the danger in marking the sales order forms that it had advised Ecolab of the optional rear guard-door and in concealing such failure by falsely indicating on the order form to the manufacturer that it had adequately advised the purchaser of all the options, risks, and uses of the standup forklift. Further, there exists a question of misrepresentation in 1996 as to whether the materials on the rear guard-door was false and prevented Ecolab from using such safety device. The essential elements of this theory of liability "(1) the defendant's negligent supply of false information to foreseeable persons, known or unknown; (2) such persons' reasonable reliance upon that false information; and (3) economic injury proximately resulting from such reliance." *Hardaway Co. v. Parsons, Brinckerhoff, Quade & Douglas, Inc.*, 267 Ga. 424, 426 (1) (479 SE2d

727) (1997); accord *Robert & Co. Assoc. v. Rhodes-Haverty Partnership*, 250 Ga. 680 (300 SE2d 503) (1983). There are disputed issues of fact on each of these elements which a jury could decide in favor of the plaintiff.

*Judgment affirmed in part and reversed in part in Case No. A04A2020. Judgment reversed in Case No. A04A2251. Ruffin, P. J., and Adams, J., concur.*

DECIDED SEPTEMBER 24, 2004 —
RECONSIDERATION DENIED OCTOBER 6, 2004 —

*Speckhals & Cora, Trent B. Speckhals, Hector R. Cora, Dietrick, Evans, Scholz & Williams, William P. Evans*, for appellants.

*Kasowitz, Benson, Torres & Friedman, Thomas G. Tidwell, Richter, Head, Shinall & Whige, Carolyn A. Wilson*, for appellees.