A97A1113. BISHOP et al. v. FARHAT et al.
A97A1114. BAXTER HEALTHCARE CORPORATION et al.
v. BISHOP et al.
A97A1115. ANSELL, INC. v. BISHOP et al.
A97A1116. DELTA MEDICAL SYSTEMS, INC. v. BISHOP et al.
(489 SE2d 323)

RUFFIN, Judge.

Jill Bishop, a nurse, filed this complex products liability action against several manufacturers and distributors of latex examination and surgical gloves. Bishop claims that her use of the defendants' gloves in her work with doctors' offices and hospitals over the course of several years caused her to develop a severe allergy to the proteins contained in latex. She alleges that on February 5, 1993, she had become so sensitive to these latex proteins that she suffered a severe allergic reaction and, since that time, has been unable to resume employment. Among her other causes of action, Bishop claims the defendants breached their duties to warn her of the risk of latex allergy and negligently inflicted emotional distress upon her. Bishop's husband, Terrell, has made claims against the defendants for loss of consortium.

Before this Court are several appeals involving issues raised by the Bishops and by defendants Baxter Healthcare Corporation ("Baxter"); Ansell, Inc. ("Ansell"); and Delta Medical Systems, Inc. ("Delta"). In Case No. A97A1113, the Bishops claim the trial court erred by refusing to allow them to amend their complaint to substitute another manufacturer, Safeskin Corporation ("Safeskin"), for "John Doe 1." The Bishops also claim error in the trial court's dismissal of their claim for negligent infliction of emotional distress. In Case No. A97A1114, defendant Baxter claims the trial court should have granted its motion for summary judgment based on the statute of limitation. In Case No. A97A1115, defendant Ansell appeals the denial of its motions for summary judgment based on the statute of limitation and proximate cause arguments. In Case No. A97A1116, defendant Delta appeals, claiming the trial court should have granted it summary judgment because (1) the statute of limitation had expired and (2) it had no actual or constructive knowledge of the danger of latex allergy.

## Case No. A97A1113: The Bishops' Appeal

1. In their first enumeration of error, the Bishops claim the trial court erred when it denied their motion to substitute Safeskin Corporation for a "John Doe" defendant in this action. The original complaint filed in February 1995 named as additional defendants "John Does 1-10," alleged to be unknown parties "who were involved in the design, manufacture, distribution, assembly, packaging and/or chain of distribution" of the latex gloves at issue. In an amended complaint filed on January 19, 1996, the Bishops sought to substitute Safeskin for "John Doe 1." The Bishops alleged that Safeskin "knew or should have known that, but for a mistake concerning the identity of the manufacturer of [gloves sold by defendant Delta], the action would have been brought against Safeskin within the limitations period." The trial court, exercising discretion pursuant to OCGA § 9-11-21, found the Bishops had prejudiced Safeskin through their unnecessary delay in adding the company as a defendant. See, e.g., *Shiver v. Norfolk-Southern R. Co.*, 220 Ga. App. 483, 484 (469 SE2d 769) (1996).

We find the trial court erred in exercising discretion under OCGA § 9-11-21, for that statute does not apply when a plaintiff seeks to *substitute* a named defendant for a "John Doe." See *Harper v. Mayor &c. of Savannah*, 190 Ga. App. 637, 638 (1) (380 SE2d 78) (1989) (physical precedent only); *Larson v. C. W. Matthews Contracting Co.*, 182 Ga. App. 356, 357 (1) (356 SE2d 35) (1987) (physical precedent only). The applicable procedure is that set forth in OCGA § 9-11-15 (c), by which the trial court determines whether the amended complaint "relates back" to a filing within the statute of limitation. So long as the claim against the new party arises out of the same transaction or occurrence alleged in the original complaint, this statute requires the trial court to determine only whether (1) the new defendant received such notice of the action that it will not be prejudiced by defending on the merits, and (2) the new defendant knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against it. OCGA § 9-11-15 (c); *Larson*, supra at 357 (2). Where the defendant shows that one of these two elements has not been met, the burden shifts to the plaintiff to show they were met. *American Transport v. Thompson*, 218 Ga. App. 54, 55-56 (460 SE2d 298) (1995). Although the trial court must determine whether the amendment relates back, the party seeking to amend its complaint pursuant to OCGA § 9-11-15 need not seek leave of court to file its amendment unless a pre-trial order has been entered. See *Larson*, supra at 357.

Here, the trial court did not determine whether Safeskin

received notice of the action before the statute of limitation expired, or whether Safeskin would be prejudiced by having to defend this action on the merits. We note that because the trial court found the Bishops' delay inexcusable under OCGA § 9-11-21, it did not address their request for additional time to show that Safeskin had adequate notice of these claims. Because the trial court has not yet addressed that request, this Court will not do so. The trial court's ruling is, therefore, reversed, and the matter is remanded for further determination pursuant to OCGA § 9-11-15 (c).

2. In their second enumeration, the Bishops contend the trial court erred by dismissing their claims for negligent infliction of emotional distress. This enumeration is without merit. In Georgia, "the impact which will support a claim for damages for emotional distress must result in a physical injury." *OB-GYN Assoc. &c. v. Littleton*, 259 Ga. 663, 666 (2) (A) (386 SE2d 146) (1989); see also *Ford v. Whipple*, 225 Ga. App. 276 (483 SE2d 591) (1997). We do not interpret the trial court's decision to prohibit the Bishops from recovering damages if they can show that a physical injury caused emotional distress, pain, and suffering.

### Case No. A97A1114: Baxter's Appeal

3. Baxter appeals the trial court's denial of its motion for summary judgment based on the expiration of the statute of limitation. On appeal from the denial of a motion for summary judgment, we construe the evidence and all reasonable inferences from the evidence most strongly in favor of the non-movant, and review the trial court's ruling de novo under the standard set forth in *Lau's Corp. v. Haskins*, 261 Ga. 491, 495 (4) (405 SE2d 474) (1991). A defendant seeking summary judgment who does not bear the burden of proof at trial "must demonstrate by reference to evidence in the record that there is an absence of evidence to support at least one essential element of the non-moving party's case." Id.

"[F]ailure to warn of a hazard capable of producing an injury due to continued exposure constitutes a continuing tort, which 'accrues' when the failure to warn is discovered by the injured plaintiff. [Cit.]" *Miles v. Ashland Chem. Co.*, 261 Ga. 726, 727 (410 SE2d 290) (1991). The statute of limitation does not begin to run until the victim is warned of the danger, discovers it, or should in the exercise of ordinary care have otherwise learned of it. *Marbut v. PPG Indus.*, 148 Ga. App. 721 (252 SE2d 628) (1979). Bishop claims that on February 5, 1993, she suffered a severe allergic reaction to a latex glove. She and her husband filed this suit on February 3, 1995, within the two-year limitation period for personal injury and the four-year period provided for loss of consortium by OCGA § 9-3-33. Baxter, however,

claims that Bishop suffered allergic reactions to latex gloves as far back as 1990. Because she "knew or should have known" of her allergy to latex at this earlier date, Baxter argues, the Bishops' action for personal injury and loss of consortium is time-barred.

In support of its motion, Baxter produced a statement Bishop made to a risk manager shortly after her severe allergic reaction in February 1993. When the adjuster asked whether she had previously "noticed reactions from rubber gloves before with powder on them and stuff," Bishop stated, "Yeah. See, I knew I was allergic to them. I knew for a fact that I was allergic." Baxter also produced an affidavit from Bishop's physician, Dr. Boyd, showing his medical notes reflected that "she had been allergic to latex gloves since experiencing [an illness]" in 1990.

Bishop countered that she did not know before February 1993 of her latex allergy; rather, she believed the *powdered cornstarch* used as a coating in some of the gloves she wore was causing her problems. The record shows that Bishop has worn latex gloves in her work since 1987. In the summer of 1992, while wearing *powdered* latex gloves apparently made by Baxter, she began to suffer itchy, watery eyes. In July 1992, her left arm became red and itchy while wearing powdered latex gloves. Bishop then switched to *non-powdered* gloves and, although she had some symptoms over the following months, attributed those problems to other causes or to the fact that others with whom she worked wore powdered gloves. She produced a different supporting affidavit from Dr. Boyd, who clarified that Bishop had not necessarily told him she had an "allergy to gloves" beginning in 1990. Furthermore, the affidavit of co-worker Joyce Hooker, submitted by Baxter in support of its motion for summary judgment, confirms that as a result of these problems Bishop requested that Hooker order only *non-powdered* gloves for use in their medical office.

Here, Bishop's argument is that because Baxter failed to warn her that wearing latex gloves could cause her to become sensitized to *latex proteins*, she mistakenly believed she was sensitive to a *powder coating* in the gloves and could remedy that problem by avoiding the powder. Under the circumstances, whether her beliefs and actions were reasonable may not be determined on summary judgment. "The occurrence of 'an injury' [cit.] means the discovery of the particular injury for which the action is brought." *Anderson v. Sybron Corp.*, 165 Ga. App. 566, 567-568 (299 SE2d 160) (1983), aff'd, 251 Ga. 593 (310 SE2d 232) (1983). This evidence creates a jury issue as to whether Bishop "knew or through reasonable diligence should have discovered that [her] injury resulted from [Baxter's failure to warn] before or after the two years preceding the filing of [her] suit." *King v. Seitzingers, Inc.*, 160 Ga. App. 318, 320 (287 SE2d 252) (1981).

Our holding does not allow Bishop to "split" the product by arguing that she knew it was dangerous, but did not know which part was dangerous. Rather, our opinion merely holds that a jury question exists as to whether Bishop should have known the *cause* of her problem. Even though Bishop had a reaction she associated with powder in the gloves, a jury question exists as to when she should have associated her problems with "latex allergy." See *Andel v. Getz Svcs.*, 197 Ga. App. 653, 655 (1) (399 SE2d 226) (1990), overruled on other grounds, *Hanna v. McWilliams*, 213 Ga. App. 648, 651 (2) (b) (446 SE2d 741) (1994).

### *Case No. A97A1115: Ansell's Appeal*

4. In its first enumeration of error, Ansell argues that because Bishop stopped using its brand of powdered gloves in July 1992, at a time before she became "sensitized" to latex, its product could not have caused her injury. However, Bishop's expert, Dr. Sullivan, testified to a reasonable degree of medical certainty that Bishop's use of Ansell's gloves "contributed to [her] sensitization to latex." Expert testimony can sometimes prevent summary judgment. *Bob v. Hardy*, 222 Ga. App. 550, 555 (6) (474 SE2d 658) (1996). Here, although other products may have caused Bishop to become sensitive, the evidence does not exclude the inference that Ansell's product was a contributing cause. See *Deans v. Dain Mgmt.*, 201 Ga. App. 466, 468-469 (1) (411 SE2d 354) (1991). Although Ansell points to these other potential causes of Bishop's injury, a jury question remains concerning which of the latex sources caused the injury. See *Atlanta Obstetrics &c. Group v. Coleman*, 260 Ga. 569, 570 (398 SE2d 16) (1990). In the cases Ansell cites, the plaintiffs showed no evidence that they had *ever been exposed* to a product made by the defendant. See *Blackston v. Shook &c. Insulation Co.*, 764 F2d 1480, 1482-1483 (11th Cir. 1985); *Talley v. City Tank Corp.*, 158 Ga. App. 130, 134-135 (3) (279 SE2d 264) (1981). Here, the question is not exposure, but *causation*.

We disagree with Ansell's argument that Dr. Sullivan's affidavit is too "speculative" to create an issue of fact on the element of causation. Dr. Sullivan testified to his expertise and stated that, based upon Bishop's descriptions of her use of the gloves and her prior reactions to the gloves, it was his opinion that Ansell's gloves contributed to her condition. The expert's lack of knowledge as to the exact latex content of Ansell's gloves and Bishop's exposure to other latex-containing products goes to the weight and credibility of his testimony but does not give the court reason to exclude the testimony completely. See *Orkin Exterminating Co. v. McIntosh*, 215 Ga. App. 587, 591-593 (4) (452 SE2d 159) (1994); *Jones v. Ray*, 159 Ga. App. 734, 736 (4) (285 SE2d 42) (1981).

5. In its second enumeration of error, Ansell adopts Baxter's argument regarding the statute of limitation defense. This enumeration is without merit for the reasons discussed in Division 3, supra.

### Case No. A97A1116: Delta's Appeal

6. Delta was the distributor of nonpowdered, "hypoallergenic" gloves which Bishop allegedly wore after July 1992. It asserts error in the trial court's denial of its motion for summary judgment. Delta argues that because it had no knowledge of any dangers of latex allergy, it had no duty to warn Bishop. As a distributor, Delta could be held liable for negligent failure to warn only if, at the time of the sale, it had "actual or constructive knowledge" that its product created a danger for the consumer. See *Stiltjes v. Ridco Exterminating Co.*, 192 Ga. App. 778, 780 (2) (b) (386 SE2d 696) (1989); *Beam v. Omark Indus.*, 143 Ga. App. 142, 145 (1) (b) (237 SE2d 607) (1977). The seller is required to warn if he " 'has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge' of the danger[.] [Cit.]" *Chrysler Corp. v. Batten*, 264 Ga. 723, 725 (1) (450 SE2d 208) (1994).

Although Delta may have had no *actual* knowledge of the dangers of latex allergy prior to March 1993, the record indicates the company had received complaints that its competitors' powdered latex gloves caused itching and chafing of wearers' hands. As Delta's president testified, before February 1993, he (much like Bishop) assumed the powder in his competitors' gloves caused this problem. Bishop's expert testified, however, that latex allergy has been documented in medical literature and "universally recognized by experts in this area" since 1979. Severe reactions, he added, have been reported in medical literature since 1986, and the Food & Drug Administration issued a "medical alert" regarding latex-containing medical devices in March 1991. Given this evidence, whether Delta should have reasonably known of the danger of latex allergy between July 1992 and February 1993 is a jury question, as is the question of whether such knowledge would have required Delta to refrain from labeling its gloves "hypoallergenic." Compare *Stiltjes*, supra.

7. Delta's challenge to the trial court's denial of its motion for summary judgment based on the expiration of the statute of limitation is rejected for the reasons outlined in Division 3, supra.

*Judgment in Case No. A97A1113 affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion. Judgments in Case Nos. A97A1114, A97A1115, and A97A1116 affirmed. Birdsong, P. J., and Eldridge, J., concur.*

DECIDED JUNE 17, 1997 —
RECONSIDERATION DENIED JULY 10, 1997 —

*Meadows, Ichter & Trigg, Lauren S. Antonio, Steven M. Kushner, Doffermyre, Shields, Canfield & Knowles, Ralph I. Knowles, Jr.,* for Bishop et al.

Yamin Farhat, *pro se.*

*Alembik, Fine & Callner, Lowell S. Fine, Heidi K. Martin,* for Safeskin Corporation and Delta Medical Systems, Inc.

*Alston & Bird, Bernard Taylor, Laura L. Owens, James C. Grant, G. Conley Ingram,* for Baxter Healthcare Corporation.

*Love & Willingham, John A. Gilleland, Richard J. Warren,* for Ansell, Inc.