**SECOND DIVISION
DOYLE, P. J.,
DAVIS, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.gov/rules**

**May 15, 2026**

# In the Court of Appeals of Georgia

A26A0725. TAYLOR et al. v. MOOD RITE, LLC et al.

Davis, Judge.

In this product liability action involving an herbal supplement known as "kratom," James and Lori Taylor appeal from the trial court's orders granting summary judgment to Mood Rite, LLC, Magic Vapor, LLC, Jastinder Thind, and Gurmeet Josan.[1] On appeal, the Taylors allege the trial court erred in granting Mood Rite's motion for summary judgment by (1) finding as a matter of law that Mood Rite

---

[1] The initial complaint named Mood Rite and Cobb Express41, LLC as defendants. Cobb Express41 entered into and satisfied a consent judgment with the Taylors. The Taylors added several additional defendants but later dismissed the complaint against most of them. The remaining defendants in the Taylors' complaint are Mood Rite, Magic Vapor, Thind, and Josan. After granting Mood Rite and Magic Vapors' motions for summary judgment, the trial court granted the Taylors' motion to dismiss Worldwide Manufacturing, LLC as a defendant over Mood Rite's objection.

was not a manufacturer of the kratom products under OCGA § 51-1-11; (2) finding there was no genuine issue of disputed fact that Mood Rite had actual or constructive knowledge of the dangers kratom posed; and (3) finding that the claims against Magic Vapor were dependent on the success of the claims against Mood Rite. We discern no error.

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. OCGA § 9-11-56(c). On appeal from an order granting a motion for summary judgment, we apply a de novo standard of review, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant. *Wadley v. Mother Murphy's Lab'ys, Inc.*, 357 Ga. App. 259, 260 (850 SE2d 490) (2020). The nonmoving party "must point to specific evidence giving rise to a triable issue ... even if meager and indefinite, [the evidence] may be sufficient to establish the necessary standard as against a motion for summary judgment since this slight evidence must be considered in the light most favorable to plaintiffs." *Bright v. Sandstone Hospitality, LLC*, 327 Ga. App. 157, 157-58 (755 SE2d 899) (2014) (quotation marks omitted). So viewed, the evidence shows the following.

Kratom is an herbal substance derived from the leaves of a tropical evergreen tree native to southeast Asia known as Mitragyna speciosa that contains the alkaloid mitragynine. OCGA § 16-13-120(2), (4). OCGA § 16-13-120(3) and (4) define "kratom extract" as a product that has been modified, processed, or otherwise manufactured with a food-grade solvent and "kratom product" as a product containing any part of the leaf of the plant mitragyna. Thind and Josan, a married couple, are the co-owners of Mood Rite and Magic Vapor. Mood Rite was incorporated and began buying and selling kratom in 2020 after Josan met the owner of Worldwide Manufacturing, LLC ("Worldwide") at a trade show. Mood Rite purchased kratom product from Worldwide, packaged the kratom into bags and plastic containers, and put Mood Rite labeling on the containers. The Mood Rite labeling included a warning that the product was not approved by the Food & Drug Administration (FDA) and that the FDA considered kratom not to be fit for human consumption. Otherwise, the bottle contained "[n]o directions for use." All of the information on the Mood Rite kratom labeling was designed and created by the owners or employees of Mood Rite.

The Taylors show that in 2014, the FDA published an alert warning that "the scientific literature discussed serious concerns regarding the toxicity of kratom," In 2019, the Georgia Legislature enacted OCGA § 16-13-120 which categorizes kratom as a controlled substance. And according to the Taylors' brief, a 2020 U.S. Drug Enforcement Administration (DEA) drug fact sheet indicates kratom is addictive. The Taylors' brief also references the following items supporting their claim that Mood Rite should have known ingesting kratom could cause death: a news release about a 2017 death that was attributed to kratom; an article which notes there were 1,807 calls to the national poison control center between 2011 and 2017; a 2019 publication from The New England Journal of Medicine discussing deaths in Colorado that were attributed to kratom; and, a 2019 FDA alert warning of serious health risks, including death. Thind, however, testified on behalf of Mood Rite that they did not have actual knowledge of any risks associated with ingesting kratom, including the risk of death.

The Taylors filed the instant complaint seeking relief from Mood Rite for the death of their 27-year-old son, Brendan Taylor, who died of acute mitragynine toxicity in April 2021, after ingesting Mood Rite's kratom product. The Taylors filed failure to warn claims based on theories of strict liability and negligence. Finding that there

was no evidence that Mood Rite, Magic Vapor, Thind, or Josan were manufacturers of the kratom products, as contemplated by OCGA § 51-1-11.1, and thus could not be held strictly liable for any injuries, the trial court granted the motion for summary judgment on the strict liability claim. The trial court also granted summary judgment on the Taylors' negligence claim, finding that there was no evidence that Mood Rite, Magic Vapor, Thind, or Josan had actual or constructive knowledge of the dangers posed by ingesting kratom which could cause death. In a separate order, the trial court granted summary judgment to Magic Vapor on the basis that it was not liable on the Taylors' claims because there was no evidence that it was a joint venture with Mood Rite. The Taylors appealed.

1. The Taylors assert the trial court erred in finding that Mood Rite was not a "manufacturer" of the kratom products under OCGA § 51-1-11.1.

Under Georgia law,

> [t]he manufacturer of any personal property sold as new property directly or through a dealer or any other person shall be liable in tort, irrespective of privity, to any natural person who may use, consume, or reasonably be affected by the property and who suffers injury to his person or property because the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained.

5

OCGA § 51-1-11(b)(1). Although the statute does not directly define the term "manufacturer," OCGA § 51-1-11.1 distinguishes between a "product seller" and a "manufacturer." In relevant part, a product seller "blends; packages; labels; markets; or assembles pursuant to a manufacturer's plan, intention, design, specifications, or formulation ... or otherwise is involved in placing a product in the stream of commerce." OCGA § 51-1-11.1(b) clarifies that, "[f]or the purposes of a product liability action based in whole or in part on the doctrine of strict liability in tort, a product seller is not a manufacturer as provided in OCGA § 51-1-11 and is not liable as such." Further, "[s]ince OCGA § 51-1-11(b) is in derogation of common law, then it must be strictly construed to apply to actual manufacturers or designers only." *Boyce v. Gregory Poole Equip. Co.*, 269 Ga. App. 891, 894(1)(b) (605 SE2d 384) (2004).

The Taylors assert that, because Mood Rite assembled, packaged, and labeled the kratom, this creates a question for the jury as to whether Mood Rite "had input" such that it was "actively involved" in the conception, design, or specification of the product. Based on the evidence, however, the trial court found that Mood Rite manufactures nothing because Mood Rite merely bottles the existing kratom into Mood Rite containers and moves those containers down the chain of commerce. We

6

agree. Even viewed in the light most favorable to the Taylors, the evidence in the record does not support the position that Mood Rite is a manufacturer. Rather, Mood Rite is merely a product seller and not subject to the strict liability standard applied to manufacturers.

The evidence shows that Mood Rite purchased kratom in powder and capsule form from Worldwide Manufacturing. Although Mood Rite selected specific strains of kratom powder and capsules, it did not make any changes to the kratom product it received from Worldwide. It is undisputed that Mood Rite did not harvest or dry the leaves of the mitragyna plant to form the powder or capsules which they purchased from Worldwide and repackaged under the Mood Rite name. While Mood Rite designed, manufactured, and applied the label for the kratom it sold, Mood Rite had no input into designing, manufacturing or assembling the actual kratom product. The sole basis on which the Taylors allege Mood Rite is a manufacturer is through the branding, marketing, and labeling of the kratom product. But an entity which merely repackages and labels a product is not a manufacturer. OCGA § 51-1-11; *Alltrade, Inc. v. McDonald*, 213 Ga. App. 758, 759 (445 SE2d 856) (1994) ("Under the plain meaning of [OCGA § 51-1-11], one who merely labels a product as its own prior to its sale but

7

has no input into its making, either by design or manufacture or assembly, is a product seller and not a manufacturer."). This assertion amounts to the "ostensible manufacturer" argument that has been rejected since the enactment of the 1987 tort reform act and OCGA § 51-1-11.1. *Buford v. Toys R Us, Inc.*, 217 Ga. App. 565, 566 (1) (485 SE2d 373) (1995) (Appellants did not contest that the seller was not the manufacturer of the bicycle, but contended that by selling the bike under the seller's brand name, the seller became an "ostensible" manufacturer.). "Under OCGA § 51-1-11.1, a product seller is not a manufacturer and this includes a seller who merely labels a product as its own prior to sale." Id. We thus discern no error in the trial court's grant of summary judgment to Mood Rite on the Taylors' product liability claim based on the lack of evidence that Mood Rite is a manufacturer as contemplated by OCGA § 51-1-11.

2. The Taylors also assert the trial court erred by granting summary judgment on their failure to warn negligence claim because it erred in finding there was no evidence in the record that Mood Rite had actual or constructive knowledge that ingesting kratom could cause death. The trial court found that the FDA announcements, and medical journal articles referenced by the Taylors were not

8

sufficient to show that Mood Rite should have known of the danger of ingesting kratom. Given the record before us, we agree with the trial court.

> [A]s a general proposition, issues of negligence ... are not susceptible of summary adjudication ... but should be resolved by trial in the ordinary manner. The trial court can conclude as a matter of law that the facts do or do not show negligence on the part of the defendant or the plaintiff only where the evidence is plain, palpable and undisputable.

> *Robinson v. Kroger Co.*, 268 Ga. 735, 739 (1) (493 SE2d 403) (1997).

A seller is required to warn consumers of the dangers of which they have actual or constructive knowledge. See *Bishop v. Farhat*, 227 Ga. App. 201, 206(6) (489 SE2d 323) (1997) (quotation marks omitted). Georgia case law demonstrates some ways in which a plaintiff can establish that a defendant had constructive knowledge of a dangerous condition. A plaintiff can point to a scientific study of the dangerous condition that was published prior to the date of the accident. For example, in *Stiltjes v. Ridco Exterminating Co.*, 192 Ga. App. 778, 780 (386 SE2d 696) (1989), an expert testified about a medical study which showed the pesticides at issue in the suit were particularly dangerous to asthmatics. But the pesticide application which was the subject of the suit occurred in 1983 and the study referenced was published in 1986.

Id. Thus, the study was not evidence that the defendant was on notice of the dangers the pesticide posed.

Plaintiffs can also show constructive knowledge by showing that the dangerous condition was recognized by experts in the relevant area at a time prior to the injury. In *Bishop*, the plaintiff's expert testified that latex allergy, the danger at issue in that case, had been documented in medical literature and universally recognized by experts in the field for over thirty years prior to the injury sustained by Bishop. 227 Ga. App. at 206(6). "The seller is required to warn if he has knowledge, or by the application of reasonable, developed human skill and foresight should have knowledge of the danger." Id. This standard prevents sellers from deliberately remaining ignorant of safety issues.

While Thind testified that Mood Rite had no actual knowledge of the risks posed by ingesting kratom, the Taylors assert that there are more than sufficient facts in the record to demonstrate that Mood Rite knew, or at least should have known, that using kratom could cause death. The Taylors' brief contains references to the following information:

- A 2014 FDA alert for kratom citing "serious concerns regarding the toxicity of kratom in multiple organ systems."

- The Drug Enforcement Agency's 2020 fact sheet on kratom which indicates kratom causes addiction.

- An article published in a Clinical Toxicology journal indicating that from 2011 to 2017, there were 1,807 calls to the national poison control centers reporting exposure to kratom.

- A letter to the editor of the New England Journal of Medicine published January 2, 2019, asserting kratom was determined to be a cause of death in 91 of 152 deaths. The authors of that letter reviewed Colorado death certificates from 1999-2017 and identified 15 kratom-related deaths; four of those deaths involved mitragynine only.

- A news article indicating that a 2017 death in Tampa Bay, Florida, was attributed to kratom.

- A 2019 FDA alert warning of serious health risks including "abuse, dependence, addiction, overdose and death."

The Taylors also produced evidence of complaints received by Mood Rite regarding the taste, smell, and unusual color of the kratom product, and complaints that after using the product, individuals suffered sweats, palpitations, and nausea. The Taylors cite the potency level discrepancy from shipment to shipment of the kratom product Mood Rite received as evidence Mood Rite should have known the product was dangerous, or at a minimum, conducted some investigation into the safety of the product. The Taylors submit that Brendan's cause of death itself is evidence that Mood Rite should have known ingesting kratom could cause death, because it was commonly known in the forensic medical community to be sufficient to support an

11

official cause of death.

Even viewed in the light most favorable to the Taylors, we find the evidence in the record does not present a genuine issue of material fact as to whether "by the application of reasonable, developed human skill and foresight," Mood Rite should have known there was a danger that consuming kratom could result in death such that it needed to issue a warning to that effect on the label of its kratom products. *Bishop*, 227 Ga. App. at 206(6). The record shows that where deaths were reported, they appear to be localized and not widely publicized or available such that Mood Rite should have been aware of them through reasonable diligence. Similarly, we are unpersuaded that the medical examiner's determination of Brendan's cause of death means that the sellers of the product should have reasonably known ingesting it could cause death *before* the death occurred. And the customer complaints and potency level discrepancies do not indicate consuming kratom could cause death.

While the DEA's kratom fact sheet from 2020 mentions some serious conditions ingesting kratom could cause — sedative effects; seizures; addiction leading to hallucinations, delusion, and confusion — death is not mentioned. Moreover, the New England Journal of Medicine article itself is not in the record; the

link in the Taylors' brief directs us to an abstract, but the article cannot be viewed without purchasing access. Further, the links in the Taylors' brief to the 2019 FDA bulletin and the 2017 article reporting a death attributed to kratom in Tampa Bay both led to error messages that the pages could not be found. And we could not locate these documents anywhere in the record. "It is axiomatic that the burden is on the appellant to establish error from the record and this burden is not satisfied by mere assertions in the appellate brief." *Benchmark Rehabilitation Partners, LLC v. SDJ Logistics, LLC*, 367 Ga. App. 203, 205(4) (885 SE2d 224) (2023). We cannot rely on documents that are not in the record. *Sheffield v. Darby*, 244 Ga. App. 437, 437(1) (535 SE2d 776) (2000). Moreover, the parties' briefs are not evidence. While it can be beneficial to hyperlink documents in support of an argument to aid in the court's review, we can only consider hyperlinks to documents which were properly admitted in the record below. See Georgia Court of Appeals Rule 25(d)(1)(i). Finally, we are not required to cull the record on behalf of appellant. *Hipster, Inc. v. Augusta Mall Partnership*, 291 Ga. App. 273, 276(2) (661 SE2d 652) (2008).

Consequently, on this record, we affirm the trial court's order granting summary judgment on the negligent failure to warn claim. Compare *Bishop v. Farhat*,

227 Ga. App. 201, 206(6) (1997), where the injury at issue was related to a latex allergy. The Court found the seller of latex gloves had a duty to warn where the record showed that latex allergy had been documented in medical literature and "universally recognized by experts in [the] area" for eighteen years, and "severe reactions" had been reported in medical literature for eleven years. Id. The record also showed the FDA issued a "medical alert" regarding latex containing medical devices six years earlier. Id.

3. Finally, as noted above, the trial court's order granting summary judgment to Mood Rite, Thind, and Josan ruled on the substantive issues addressed in this opinion, and a separate order granted summary judgment to Magic Vapor. In the second order, the trial court held that for the Taylors to be successful in their claims against Magic Vapor, they must be successful in those claims against Mood Rite. Because the Taylors' claims against Magic Vapor are identical to their claims against Mood Rite, we agree that no further analysis of the relationship between Mood Rite, Magic Vapor, Thind, and Josan is required. Accordingly, we also affirm the trial court's order granting summary judgment to Magic Vapor, Thind, and Josan.

*Judgment affirmed. Doyle, P. J., and Senior Judge C. Andrew Fuller concur.*